RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0277P (6th Cir.)
File Name: 03a0277p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

CORNEL VIOREL SCORTEANU,
*Petitioner,*

*v.*

No. 01-4271

IMMIGRATION AND
NATURALIZATION SERVICE,
*Respondent.*

_____

On Appeal from the Board of Immigration Appeals.
No. A72 171 730.

Argued: May 6, 2003

Decided and Filed: August 7, 2003

Before: KRUPANSKY, SILER, and GILMAN, Circuit
Judges.

_____

**COUNSEL**

**ARGUED:** Michael E. Piston, Troy, Michigan, for
Petitioner. Hillel R. Smith, UNITED STATES
DEPARTMENT OF JUSTICE, OFFICE OF
IMMIGRATION LITIGATION, Washington, D.C., for
Respondent. **ON BRIEF:** Michael E. Piston, Sufen Li, Troy,

Michigan, for Petitioner. James A. Hunolt, Emily A.
Radford, UNITED STATES DEPARTMENT OF JUSTICE,
OFFICE OF IMMIGRATION LITIGATION, Washington,
D.C., for Respondent.

_____

**OPINION**

_____

KRUPANSKY, Circuit Judge. This appeal arises from a
decision by the Board of Immigration Appeals ("BIA" or
"Board") to dismiss a motion by petitioner, Cornel Viorel
Scorteanu ("Scorteanu"), to reopen deportation proceedings
pursuant to section 242B(c)(3) of the Immigration and
Nationality Act ("INA" or "Act"), 8 U.S.C. § 1252b(c)(3),
alleging ineffective assistance of counsel.[1] For the reasons
discussed below, the Board's order of dismissal is affirmed.

## I. BACKGROUND

Petitioner Scorteanu is a 31-year-old native and citizen of
Romania, of Hungarian ethnicity, who entered the United
States at Chicago, Illinois on June 20, 1994 as a B-2 visitor
for pleasure. His visa authorized him to remain in the United
States until December 19, 1994. On September 15, 1994,
petitioner applied for asylum. The Chicago Asylum Office
referred his application to an Immigration Judge ("IJ").
Petitioner was served with an Order to Show Cause ("OSC"),

_____

[1] The amendments made by the Illegal Immigration Reform and
Immigrant Responsibility Act of 1996, Division C of Pub.L.No. 104-208,
110 Stat. 3009-546 ("IIRIRA"), are not applicable to the instant case. As
such, references herein are made to the Immigration and Nationality Act
as it existed prior to the enactment of the IIRIRA. The IIRIRA repealed
the section under consideration in this case, but provided transitional rules
that apply to cases, such as the instant case, where the deportation
proceedings commenced prior to April 1, 1996. The transitional rules
provided that the INA applies as codified prior to the passage of the
IIRIRA. See IIRIRA §§ 306(c)(1), 309(a).

dated September 6, 1995, charging deportability as an overstay under Section 241 (A)(1)(c)(i) of the INA. During the pendency of his merits hearing, petitioner married a United States citizen.

Petitioner retained Attorney Ronald A. Muresan ("Muresan") to represent him in his asylum case. On April 11, 1996, Scorteanu appeared with Muresan before an IJ for a Master Calendar hearing where petitioner renewed his asylum application and the IJ scheduled an Individual Merits Hearing for November 19, 1996. On November 8, 1996, Muresan informed petitioner by telephone that the immigration court had rescheduled the merits hearing and would send Muresan a written notice of a new date. Attorney Muresan received a letter, dated November 8, 1996, by certified mail from the immigration court, advising that Scorteanu's deportation hearing was rescheduled for March 26, 1997. Muresan never advised petitioner of the new hearing date, nor did he file the requested notice of petitioner's change of address with the immigration court. In the months that followed, Scorteanu contacted Muresan several times regarding notice of a new hearing date and, each time, Muresan informed petitioner that he would notify petitioner when he received the new hearing date.

Unbeknownst to Scorteanu, during this period, Muresan was suspended and eventually disbarred from the practice of law. Muresan did not advise petitioner of this development nor inform the immigration court of his suspension. As a consequence of Muresan's representation, petitioner did not receive a copy of the hearing notice and neither Scorteanu nor Muresan attended the March 26, 1997 merits hearing where, consequently, petitioner was ordered deported *in absentia* to Romania. During 1997 and 1998 Muresan fraudulently advised Scorteanu that his asylum case was still pending before the immigration court. In early 1999, Scorteanu learned from members of the Romanian community in Michigan that Muresan had been disbarred.

Scorteanu then turned to attorney Mosabi Hamed. Previously, after his 1996 marriage to a United States citizen, petitioner had retained Hamed to handle his I-130 Immigrant Petition for Alien Relative. Throughout 1999, Scorteanu kept in contact with Hamed regarding his asylum petition even though Hamed was not petitioner's attorney of record for those proceedings. Hamed continued to advise Scorteanu that he had inquired into petitioner's asylum case and assured him that it was still pending.[2]

On January 18, 2000, Scorteanu retained new counsel. As a result of his new counsel's inquiry with the Immigration and Naturalization Service ("INS"), petitioner learned of the *in absentia* Order of Deportation of March 26, 1997 in late March of 2000.[3] Nevertheless, Scorteanu waited until February 12, 2001 to file a Motion to Reopen Deportation Proceedings with the immigration court. For that proceeding Scorteanu submitted his own affidavit and an affidavit from former attorney Muresan detailing his ineffective assistance of counsel.

In denying Scorteanu's Motion to Reopen, the IJ determined in her March 15, 2001 Order that petitioner had exceeded the statutory time limit of 180 days for filing a motion to reopen based on exceptional circumstances pursuant to INA § 242B(c)(3)(A). *See Matter of A-A-*, Int.

---

[2]In early 1996, Scorteanu had married Doina Zieminska and retained attorney Mosabi Hamed to file an I-130 Immigrant Petition for Alien Relative. At no time did Hamed enter an appearance on behalf of the petitioner in the instant deportation proceedings. While Scorteanu has averred that he informed Hamed of his pending asylum application and that Hamed had agreed to inquire into the status of petitioner's asylum case, any statements made by Hamed with respect to the pendency of the deportation proceedings are irrelevant to the petitioner's claims of exceptional circumstances and lack of notice where Hamed was not petitioner's counsel of record.

[3]The BIA accepted this time frame in its November 9, 2001 dismissal of petitioner's appeal.

Dec. 3357 (BIA 1998). The IJ further observed that attorney Muresan's acknowledged receipt of notice for the March 26, 1997 deportation hearing met the statutory requirements of the act. See INA § 242B(a)(2). Finally, the court addressed, *sua sponte*, the effect of Muresan's fraud, noting: "Even assuming *arguendo* that the petitioner had some basis to assert a claim for tolling of the 180 days, more than that period elapsed between actual notice of the entry of the Court's order and the filing of the instant motion."

Scorteanu petitioned for review of the IJ's denial before the BIA on April 13, 2001. The BIA returned a dismissal of petitioner's appeal on November 9, 2001. The Board noted that petitioner's motion was filed well beyond the 180 day statutory time limit pursuant to § 242B(c)(3)(A) of the Act. The Board also addressed the IJ's *sua sponte* consideration of the possibility of equitable tolling of the 180 day time limit, observing that such equitable relief was unavailable when a party, such as the petitioner, failed to exercise due diligence on his own behalf, filing the recision motion almost a year after actual notice. Scorteanu then perfected this timely appeal.

Jurisdiction over this petition is conferred upon this Court by section 106 of the Immigration and Nationality Act, 8 U.S.C. § 1105a as it existed immediately prior to April 1, 1997, the effective date of the Illegal Immigration Reform and Responsibility Act of 1996 ("IIRIRA").

## II. ANALYSIS

The Court reviews the denial of a motion to reopen deportation proceedings for abuse of discretion. *See INS v. Doherty*, 502 U.S. 314, 323 (1992); *Ashki v. INS*, 233 F.3d 913, 921 (6th Cir. 2000); *see also INS v. Abudu*, 485 U.S. 94, 110 (1988).

Pursuant to section 242B(c)(3) of the Act, the IJ and the BIA are permitted as a matter of discretion to rescind an *in*

*absentia* order of deportation under limited circumstances. *See Sharma v. INS*, 89 F.3d 545, 547 (9th Cir. 1996). An *in absentia* order of deportation may be rescinded upon a motion to reopen filed at any time if the alien demonstrates that he or she did not receive notice in accordance with the requirements in section 242B(a)(2) of the Act. 8 U.S.C. § 1252B(c)(3)(B) (1994). Alternatively, an *in absentia* order may be rescinded upon a motion to reopen filed within 180 days of the date of the deportation order "if the alien demonstrates that the failure to appear was because of exceptional circumstances as defined in subsection (f)(2) of this section." § 242B(c)(3)(A). Thus, in seeking recision of an *in absentia* deportation order, the burden rests on the movant to demonstrate either improper notice or exceptional circumstances. *See Giday v. INS*, 113 F.3d 230, 233 (D.C. Cir. 1997).

Scorteanu has, first, averred that section 242B(c)(3)(B) of the Act permitted him to file a motion to reopen the *in absentia* order of deportation *at any time* because he failed to receive notice of the hearing. Petitioner has specifically contended that the language of section 242B(c)(3)(B) requires notice of a scheduled deportation hearing to the alien while making notice to the alien's attorney insufficient, because section 242B(c)(3)(B) refers to notice "to the alien," rather than to the alien or the alien's counsel. A brief examination of the applicable statutory language reveals the inadequacy of petitioner's contention.

Section 242B(c)(3)(B) of the Act directs that an *in absentia*,

order may be rescinded only--

...

(B) upon a motion to reopen filed at any time if the alien demonstrates that the alien did not receive notice in accordance with subsection (a)(2) or the alien demonstrates that the alien was in Federal or State custody and did not appear through no fault of the alien.

8 U.S.C. § 1252b(c)(3)(B) (1994).  The referenced subsection 242B(a)(2) of the Act provides as follows:

In deportation proceedings under section 242--

(A) written notice shall be given in person to the alien (or, if personal service is not practicable, written notice shall be given by certified mail to the alien or to the alien's counsel of record, if any), in the order to show cause or otherwise,

...

(B) in the case of any change or postponement in the time and place of such proceedings, written notice shall be given in person to the alien (or, if personal service is not practicable, written notice shall be given by certified mail to the alien or to the alien's counsel of record, if any)

8 U.S.C. § 1252b(a)(2)(A) & (B) (1994).

Petitioner has admitted that attorney Muresan, his then counsel of record, received proper certified notification of the March 26, 1997 hearing.  Because § 242B(c)(3)(B) provides for reopening of *in absentia* proceedings only as a "remedy for improper service," relief under this section is unavailable to Scorteanu.  *See Dobrota v. INS*, 311 F.3d 1206, 1211 (9th Cir. 2002) (maintaining that § 242B makes clear that "[a]n alien does not have to actually receive notice of a deportation hearing in order for the requirements of due process to be satisfied," as the INS may satisfy notice requirements by mailing notice of the hearing to petitioner's attorney's address of record); *Garcia v. INS*, 222 F.3d 1208, 1209 (9th Cir. 2000) (concluding that notice was adequate where served only upon petitioners' attorney); *Arrieta v. INS*, 117 F.3d 429, 431 (9th Cir. 1997) (finding that notice sent by certified mail to last known address rendered service presumptively effective); *Wijeratne v. INS*, 961 F.2d 1344, 1347 (7th Cir. 1992) (concluding that an IJ may send notice of hearing to alien's representative to effectively constitute notice to alien);

*Men Keng Chang v. Jiugni*, 669 F.2d 275, 277-78 (5th Cir. 1982) (explaining that service upon appellant's counsel was effective to constitute notice to appellant).

Additionally, Scorteanu's contention that the Board abused its discretion by not directly addressing his interpretation of section 242B(c)(3)(B) is without merit.  Relief under section 242B(c)(3)(B) was not available to the petitioner whose then attorney of record had, admittedly, received proper notice.  Moreover, the Board need not "list every possible positive and negative factor in its decision."  *Rodriguez-Rivera v. INS*, 993 F.2d 169, 170-71 (8th Cir. 1993).  As the Fifth Circuit has observed, the Board "has no duty to write an exegesis on every contention.  What is required is merely that it consider the issues raised, and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted."  *Osuchukwu v. INS*, 744 F.2d 1136, 1142-43 (5th Cir. 1984).  *See Torres v. INS*, No. 93-3617, 1994 WL 284540 (6th Cir. June 27, 1994) (unpublished disposition) (concluding that it was sufficient to prove that the Board fully considered the petitioner's claims when the Board explicitly recited that it had reviewed the record and the IJ's decision and adopted the reasoning of the IJ); *Najib v. INS*, No. 93-3139, 1994 WL 95935 (6th Cir. March 23, 1994) (unpublished disposition) (noting that the Board adequately set forth its reasons for denying relief by examining the IJ's application of the facts to the law, addressing petitioner's arguments on appeal and then reaching its own conclusion).  Upon review, the BIA's opinion and the record have provided this court with sufficient basis upon which to review the BIA's decision.

Petitioner has, further, asserted that exceptional circumstances warrant reopening the deportation proceedings in light of his claim not to have received notice due to ineffective assistance of counsel.  Scorteanu has specifically averred that a motion to reopen an *in absentia* deportation proceeding may be pursued at any time where ineffective assistance of counsel is shown and, as such, the BIA's

dismissal was a violation of due process. Petitioner's claim has little merit.

This Circuit has recognized that Fifth Amendment guarantees of due process extend to aliens in deportation proceedings, entitling them to a full and fair hearing. *Huicochea-Gomez v. INS*, 237 F.3d 696, 699 (6th Cir. 2001). The alien must prove that ineffective assistance of counsel resulted in prejudice or denial of fundamental fairness in order to prove a denial of due process. *Dokic v. INS*, No. 92-3592, 1993 WL 265166, *3 (6th Cir. July 15,1993) (unpublished) *(citing Aguilera-Enriquez v. INS*, 516 F.2d 565, 569 (6th Cir. 1975)). Due process requires notice that is "reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Al-Rawahneh v. INS*, No. 00-4447, 2002 WL 1021866 (6th Cir. May 17, 2002) (unpublished opinion) (finding no due process violation where aliens failed to have their mail forwarded to new address and thus failed to receive notice of OSC hearing).

Unlike the petitioner in *Al-Rawahneh*, Scorteanu had provided a forwarding address to his attorney, but relied upon him to notify the INS of that new address and to notify Scorteanu of his March 26, 1997 hearing date. Muresan's subsequent misfeasance and fraud amounted to the type of "exceptional circumstances" contemplated by §§ 242B(c)(3)(A) & (f)(2) of the Act, as material incidents beyond Scorteanu's control. Section 242B(c)(3)(A) of the Act, directs that an *in absentia,*

order may be rescinded ...

(A)  upon a motion to reopen filed within 180 days after the date of the order of removal if the alien demonstrates that the failure to appear was because of exceptional circumstances (as defined in subsection (f)(2))

8 U.S.C. § 1252b(c)(3)(A) (1994).   Section 242B(f)(2), provides:

The term 'exceptional circumstances' refers to exceptional circumstances (such as serious illness of the alien or death of an immediate relative of the alien, but not including less compelling circumstances) beyond the control of the alien.

8 U.S.C. § 1252(f)(2) (1994). *See also In re Assaad,* 23 I. & N. Dec. 553, 558 (BIA Feb. 12, 2003); *Matter of Grijalva-Barrera*, 21 I & N Dec. 472, 474 (BIA 1996) (finding rescission of an *in absentia* deportation order under § 242B(c)(3)(A), when petitioner filed to reopen within 180 days of the deportation order due to exceptional circumstances).

Both the immigration court and the Board noted that the 180 day time period prescribed in § 242B(c)(3)(A) could be subject to equitable tolling due to Muresan's ineffective assistance of counsel and, thus, suspended from running until Scorteanu had received actual notice. *See Iturribarria v. INS*, 321 F.3d 889, 897-98 (9th Cir. 2003) (holding that equitable tolling is available where petitioner's attorney engaged in fraudulent or deceptive acts); *see also Rodriguez-Lariz v. INS*, 282 F.3d 1218, 1224 (9th Cir. 2002) (recognizing equitable tolling of deadlines and numerical limits on motions to reopen or reconsider during periods when a petitioner is prevented from filing because of deception, fraud, or error, as long as the petitioner acts with due diligence in discovering the deception, fraud, or error).

Nevertheless, this court need not decide, in the instant case, whether the statute is subject to equitable tolling because, even if this court were to so concede, Scorteanu has failed to

prove entitlement to equitable relief.[4]   In *Jobe v. INS*, 238 F.3d 96, 100(1st Cir. 2001) (*en banc*), the First Circuit reviewed the petition of an alien who had failed to make a *prima facie* showing of entitlement to equitable tolling of § 242B(c)(3)(A)'s time limit. Evidence of Jobe's insufficient diligence disposed the court to dismiss the petition without deciding whether the equitable tolling doctrine would apply to the statutory provision. *Id.*  Similarly, in the instant case, this court need not address whether Muresan's ineffective assistance of counsel warranted equitable tolling because, even after having received actual notice and having retained different counsel, Scorteanu exceeded the statutory time limit by waiting until February 12, 2001 to file his motion to reopen.

Petitioner has averred that this lapse of time did not reflect an absence of due diligence, but rather resulted from the difficulty in locating former counsel Muresan and obtaining his affidavit pursuant to the requirements of *Matter of Lozada*, 19 I.&N. Dec. 637, 639, 1988 WL 235454 (BIA 1988), *aff'd*, 857 F.2d 10 (1st Cir.1988).   However, Scorteanu's contention is not persuasive as it represents a misapplication of the procedural requirements detailed in *Lozada*.  There, the BIA stated that when an alien has averred ineffective assistance of counsel, the motion should be supported by 1) an affidavit setting forth "in detail the agreement that was entered into with former counsel with

---

[4] The issue of equitable tolling due to exceptional circumstances has split the circuits. *Compare Anin v. Reno*, 188 F.3d 1273, 1278 (11th Cir. 1999) (holding that § 242B(c)(3)(A) sets forth a "mandatory and jurisdictional" time bar) *with Lopez v. INS*, 184 F.3d 1097, 1100 (9th Cir. 1999) (holding that § 242B(c)(3)(A)'s time bar is not jurisdictional and thus subject to equitable tolling). *See also* Damon W. Taaffe, *Comment: Tolling the Deadline for Appealing in Absentia Deportation Orders Due to Ineffective Assistance of Counsel*, 68 U.CHI. L. REV. 1065 (2001) (proposing a distinction between attorney misfeasance and nonfeasance, and allowing  misfeasant (or actively misleading) ineffective assistance to constitute an "exceptional circumstance" sufficient to warrant equitably tolling the 180 day appeal deadline).

respect to the actions to be taken," as well as any representations made by counsel to the alien; 2) proof that the movant has informed former counsel of the allegations in writing, as well as any response received; and 3) a statement detailing "whether a complaint has been filed with appropriate disciplinary authorities regarding such representation, and if not, why not." *Id.*; *see also Saakian v. INS*, 252 F.3d 21, 25 (1st Cir. 2001); *Lopez v. INS*, 184 F.3d 1097, 1100 (9th Cir. 1999); *Huicochea-Gomez v. INS*, 237 F.3d at 699.

Scorteanu needed only to notify former attorney Muresan of the charge of ineffective assistance of counsel.  For his part, Muresan was not required to submit an affidavit in support of Scorteanu's charge.  In short, Scorteanu has failed to prove, as he must, that the lapse of time between March 2000 and February of the following year was fostered by an exceptional circumstance beyond his control.  Consequently, this court affirms the BIA's dismissal of Scorteanu's petition to reopen proceedings.