**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0898n.06
Filed: December 15, 2006

**Case No. 05-4246**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| CHANDANA WEERASINGHE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | **ON APPEAL FROM THE** |
| v. | ) | **BOARD OF IMMIGRATION** |
| | ) | **APPEALS** |
| ALBERTO GONZALES, Attorney General, | ) | |
| | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |

**BEFORE:  BATCHELDER, GILMAN and ROGERS, Circuit Judges.**

**ALICE M. BATCHELDER, Circuit Judge.**   Petitioner Chandana Weerasinghe ("Weerasinghe") seeks review of the order of the Board of Immigration Appeals ("BIA") denying his motion to reopen deportation proceedings.  The BIA concluded that the motion to reopen was untimely and it refused to apply the doctrine of equitable tolling.  Weerasinghe petitions for review, contending that the ineffective assistance of his former counsel caused the late filing of his motion to reopen and therefore the doctrine of equitable tolling should apply.  We reject Weerasinghe's arguments and deny the petition for review.

**I.  Background**

Weerasinghe was born in Sri Lanka in 1978.  According to his own testimony, he was arrested by Sri Lankan police in August 1999 and detained for seven or eight days.  He contends that

during this time he was repeatedly beaten and questioned regarding his friendship with a member of the Tamil Tigers terrorist organization. He further alleges that his father secured his release by bribing Sri Lankan officials. Soon thereafter Weerasinghe fled from his homeland to Canada, where he lived for a year. While in Canada, Weerasinghe applied for, but did not receive, refugee status.

Approximately November 11, 2000, Weerasinghe entered the United States. The former Immigration and Naturalization Service ("INS") brought charges against him, alleging that he was removable from the United States because he entered this country in violation of Section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("Act"), 8 U.S.C. § 1182(a)(6)(A)(i). At his August 2001 deportation hearing, Weerasinghe admitted that he was removable under the Act, but indicated his desire to apply for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). The immigration judge ("IJ") set the next removal hearing for March 14, 2002, and noted that supporting documentary evidence must be submitted at least fourteen days prior to that hearing.

Sometime prior to the March 14 hearing, Weerasinghe's attorney, Jay Perez ("Perez"), informed Weerasinghe of the need to submit corroborating documents to support his asylum application. Weerasinghe alleges that he delivered the documents to Perez at least one month before the hearing. Perez, however, asserts that Weerasinghe did not provide him with the requested documents until a few days prior to the hearing. In any event, Perez attempted to introduce three documents at the March 14 hearing. Two of the documents were letters written by Sri Lankan doctors stating that Weerasinghe had suffered "blows on his head."[1] The other document was a letter

---

[1]The evidentiary value of these letters is questionable because they do not indicate the source of or any information regarding the "blows" to Weerasinghe's head.

2

from Commercial Bank of Ceylon indicating that a large sum of Sri Lankan money was released from an unidentified bank account on August 17, 1999. Perez told the IJ that he requested the documents from Weerasinghe "a long time ago," but that Weerasinghe had trouble obtaining the documents from Sri Lanka. Weerasinghe stated that he was unable to find someone to translate the documents until the "last minute." Because the three documents were dated prior to 2001, the IJ found that Weerasinghe had access to them long before the evidentiary deadline, and refused to admit them.

At another point during the hearing, Perez requested a continuance because Weerasinghe "could not answer even simple questions and appeared to be . . . disoriented," but the request was denied. Thus Weerasinghe's primary evidence was his lackluster testimony that recounted his detention in Sri Lanka and the numerous threats he received from local police and terrorist organizations. The IJ rejected Weerasinghe's claims for asylum, withholding of removal, and CAT protection, finding that his testimony was not credible and highlighting his failure to provide corroborating evidence.

After the IJ's decision, Perez told Weerasinghe that "his case was not a strong case for appeal [because he] was an extremely poor witness and . . . there was weak evidence." Weerasinghe responded by informing Perez that he would hire another lawyer to handle the appeal. However, two days prior to the appeal deadline, Weerasinghe changed his mind and asked Perez to file a brief on his behalf; Perez agreed and filed a short four-page brief in which he asserted two errors: (1) the IJ erred in finding that Weerasinghe lacked credibility and (2) the IJ erred in denying the request for a continuance. Perez did not expressly contend that the IJ erred in excluding the three documents proffered during the hearing.

On March 26, 2003, while the BIA appeal was pending, Perez filed a motion to withdraw as counsel because Weerasinghe had retained a new attorney. Immediately thereafter Perez forwarded Weerasinghe a copy of his file. On April 4, 2003, Weerasinghe's current counsel, E. Dennis Muchnicki ("Muchnicki"), entered an appearance in the removal proceedings. Over three months later, on July 14, 2003, the BIA affirmed the IJ's decision without opinion. Weerasinghe, through his counsel Muchnicki, appealed the Board's decision to the this Court, arguing that the IJ erred in excluding the corroborating documents proffered at the hearing. On May 27, 2005, this Court declared that it lacked jurisdiction to address the admissibility of the proffered documents because Weerasinghe had not made that argument before the BIA and had therefore failed to exhaust his administrative remedies. *See Weerasinghe v. Ashcroft*, No. 03-4062, 134 Fed. Appx. 26 (6th Cir. May 27, 2005).

On July 26, 2005, Weerasinghe filed a motion to reopen his removal proceedings. He specifically argued that Perez provided ineffective assistance[2] because his BIA brief did not challenge the IJ's exclusion of three corroborating documents and therefore it "was lacking in substance." On September 26, 2005, the BIA rejected Weerasinghe's motion to reopen because it was filed long after the expiration of the statutory 90-day time limit. The BIA also refused to apply the doctrine of equitable tolling because Weerasinghe failed to show that he "acted with due diligence." Weerasinghe filed a timely petition for review with this Court.

## II. Analysis

This Court has jurisdiction to review the BIA's denial of a motion to reopen deportation

---

[2]Jay Perez vehemently disputes the allegation that his representation of Weerasinghe amounted to ineffective assistance of counsel.

proceedings. *Haddad v. Gonzales*, 437 F.3d 515, 517 (6th Cir. 2006) (citing 8 U.S.C. § 1252(a)). We review the denial of a motion to reopen for abuse of discretion. *Harchenko v. INS*, 379 F.3d 405, 409 (6th Cir. 2004) (citing *INS v. Doherty*, 502 U.S. 314, 323-24 (1992)). "In determining whether the Board abused its discretion, this Court must decide whether the denial of [the] motion to reopen . . . was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group." *Sako v. Gonzales*, 434 F.3d 857, 863 (6th Cir. 2006) (quoting *Allabani v. Gonzales*, 402 F.3d 668, 675 (6th Cir. 2005)).

A respondent in a removal proceeding may file a motion to reopen at any time within 90 days of the final administrative decision. 8 U.S.C. § 1229a(c)(7)(C)(i). In our case there is no dispute that Weerasinghe did not file his motion to reopen within the 90-day period. The BIA entered its final order of removal on July 14, 2003, and Weerasinghe did not file his motion to reopen until July 26, 2005, more than two years after the final administrative decision.

On appeal Weerasinghe challenges the BIA's refusal to equitably toll the 90-day filing period. The BIA expressly found that Weerasinghe could not "rely upon 'equitable tolling' of a filing deadline" because he failed to show that he "acted with due diligence." Weerasinghe argues that equitable tolling should apply because his former counsel, Jay Perez, rendered ineffective assistance by failing to challenge the admissibility of corroborating evidence in his brief to the BIA, causing this Court to reject that argument for failure to exhaust administrative remedies. Weerasinghe also contends that his due diligence should be measured from the date of this Court's May 2005 decision, rather than the date of Perez's alleged ineffective assistance in 2003. For the following reasons, we reject both arguments and affirm the BIA's decision.

5

We recognize that a petitioner in immigration proceedings may present a claim for ineffective assistance of counsel. *Scorteanu v. INS*, 339 F.3d 407, 413 (6th Cir. 2003). "Because a deportation proceeding is a purely civil action, an ineffective assistance of counsel claim is reviewed under the Due Process Clause of the Fifth Amendment rather than under the Sixth Amendment." *Denko v. INS*, 351 F.3d 717, 723 (6th Cir. 2003). "Ineffective assistance of counsel in a deportation proceeding will rise to the level of a due-process violation under the Fifth Amendment 'only if the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case.'" *Id.* (citing *Ramirez-Durazo v. INS*, 794 F.2d 491, 499-500 (9th Cir. 1986)).[3]

Although recognizing that an ineffective assistance claim is cognizable in immigration proceedings, we have yet to decide whether such a claim supports equitable tolling of the 90-day filing deadline applicable to motions to reopen. *See Scorteanu*, 339 F.3d at 413 (noting that even though the parties conceded that a statutory filing period "could be subject to equitable tolling due to . . . ineffective assistance of counsel," the court need not decide that issue because the petitioner "failed to prove entitlement to equitable relief"). The circuits as a whole are divided on this issue. *See Panova-Bohannan v. Gonzales*, No. 04-60540, 157 Fed. Appx. 706, 707 n.6 (5th Cir. December 9, 2005) (collecting cases). Because Weerasinghe failed to prove that he would be entitled to equitable relief if it were available, we need not decide whether the 90-day limitations period in 8 U.S.C. § 1229a(c)(7)(C)(i) is subject to equitable tolling. *See Scorteanu*, 339 F.3d at 413.

---

[3]The BIA requires that a petitioner asserting ineffective assistance of counsel must support the motion to reopen with (1) "an affidavit setting forth 'in detail the agreement that was entered into with former counsel with respect to the actions to be taken,' as well as any representations made by counsel to the alien; (2) proof that the movant has informed former counsel of the allegations in writing, as well as any response received; and (3) a statement detailing 'whether a complaint has been filed with appropriate disciplinary authorities regarding such representation, and if not, why not." *Scorteanu*, 339 F.3d at 414 (quoting *Matter of Lozada*, 19 I. & N. Dec. 637, 639 (BIA 1988), *aff'd*, 857 F.2d 10 (1st Cir. 1988)). There is no dispute that Weerasinghe has satisfied these requirements in filing his motion to reopen with the BIA.

A litigant seeking to invoke equitable tolling must prove that he acted with due diligence in pursuing his rights. *See Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984) ("One who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence."); *Andrews v. Orr*, 851 F.2d 146, 151 (6th Cir. 1988) (noting that one of the equitable tolling factors is "diligence in pursuing one's rights"). We agree with the BIA that Weerasinghe and his present attorney failed to act with due diligence in pursuing the motion to reopen. In March 2003, Perez withdrew as counsel and returned Weerasinghe's file; soon thereafter Muchnicki entered an appearance as Weerasinghe's counsel. It is thus clear that by April 2003 Muchnicki had access to Weerasinghe's file and the brief submitted by Perez to the BIA. It is also undisputed that the BIA did not issue its decision until July 14, 2003. We therefore know that Muchnicki had access to the contents of Perez's brief at least three months before the BIA's decision. If he considered Perez's brief to be insufficient, he could have filed a supplemental brief with the BIA. *See* BIA Prac. Man. Ch. 4.6(g)(ii) (permitting supplemental briefs based on new arguments outside the original briefing schedule).

Alternatively, Muchnicki could have filed a motion to reconsider or a motion to reopen soon after the BIA's July 14 decision. 8 U.S.C. § 1229a(c)(6) (governing motions to reconsider); 8 U.S.C. § 1229a(c)(7) (governing motions to reopen). Because he knew that Perez's BIA brief did not raise the IJ's refusal to admit corroborating documents, he should have expected that this Court would refuse to address this argument, finding that Weerasinghe failed to exhaust his administrative remedies. *See* 8 U.S.C. § 1252(d) (stating that a court may review a final order of removal only if the petitioner has exhausted all available administrative remedies). Weerasinghe could have avoided this jurisdictional problem by filing a motion to reconsider or a motion to reopen immediately after

7

the BIA's order was issued. Instead, he chose to appeal the BIA's decision to this Court, rather than to file a motion to reopen. The fact that the BIA summarily affirmed the IJ's decision did not relieve Weerasinghe of his timely filing obligation. *See Bal v. Gonzales*, No. 06-3179, 2006 WL 3539297, at 2 (6th Cir. December 7, 2006) (noting that a "BIA summary affirmance [is] a final appealable removal order" and a petitioner must "file a timely petition for review of that decision").

Weerasinghe further contends that the BIA improperly measured diligence from the time the case was originally before the BIA in July 2003 rather than the date of this Court's decision in May 2005, specifically noting that "the grounds for the motion to reopen were created by this Court's May 27, 2005 decision." But this Court's May 2005 decision did not create the grounds for Weerasinghe's motion to reopen; rather, Perez's alleged ineffective assistance, which occurred when he filed the BIA brief, "created" the grounds for the motion to reopen. While Muchnicki did not know the precise effects of Perez's alleged ineffective assistance until May 2005, he knew of the conduct comprising this ineffective assistance in 2003 and could have filed his motion to reopen at that time. We therefore reject Weerasinghe's attempt to shift the basis of his motion to reopen from the alleged ineffective assistance in 2003 to this Court's decision in 2005.[4]

### III. Conclusion

For the foregoing reasons, we find no abuse of discretion in the BIA's dismissal of Weerasinghe's motion to reopen, and we deny the petition for review.

---

[4]Weerasinghe also argues that the *Scorteanu* decision indicates that the petitioner's diligence in pursuing his motion to reopen is "measured from the time of the alien's actual notice of the ineffective assistance." Regardless of whether this is a proper interpretation of the *Scorteanu* decision -- which is extremely doubtful -- we note that it would not change the outcome in this case. Weerasinghe and his new counsel had actual notice of Perez's alleged ineffective assistance when they reviewed his BIA brief in 2003, and thus they filed the motion to reopen approximately two years after receiving actual notice. This conduct certainly does not demonstrate diligence.