**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0067n.06

**No. 12-3124**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

> **FILED**
> *Jan 15, 2013*
> DEBORAH S. HUNT, Clerk

| | |
|---|---|
| VICTOR FERNANDO ARREAGA DIAZ, | ) |
| | ) |
| Petitioner, | ) ON PETITION FOR REVIEW |
| | ) OF THE BOARD OF |
| v. | ) IMMIGRATION APPEALS |
| | ) |
| ERIC H. HOLDER, JR., Attorney General, | ) |
| | ) |
| Respondent. | ) |
| | ) |

BEFORE:  BATCHELDER, Chief Circuit Judge; DAUGHTREY and ROGERS, Circuit Judges.

ROGERS, Circuit Judge.  Victor Arreaga Diaz seeks review of a decision of the Board of Immigration Appeals denying his application for asylum and withholding of removal under 8 U.S.C. § 1158 and § 1231(b)(3), and Article 3 of the United Nations Convention Against Torture.  Diaz does not meet the requirements for relief under the Immigration Act because (1) he cannot establish either that he was persecuted by the government or guerrilla forces during the Guatemalan civil war or that he would now be persecuted by the Guatemalan government, and (2) even if he did suffer past persecution, he cannot establish that it was due to his imputed political views or any of the other statutory grounds.  He also does not qualify for relief under the Convention because he cannot establish that he has been tortured or is likely to be tortured by the government if removed to Guatemala.  Diaz's humanitarian relief claim is meritless because he has not shown prior

persecution. Finally, his "pattern or practice" claims were sufficiently addressed by the board to meet due process requirements.

Diaz is a Guatemalan citizen of the Mam ethnic group. He claims that he and his family fled Guatemala in 1983, following a period of civil war in which guerrilla forces tried to persuade indigenous people like the Mam to join in their war. Diaz claims that these guerrillas forcibly stayed in people's houses and demanded food and supplies, that families like his were afraid of both the guerrillas and the government, and that his family felt they had no option but to comply with the guerrillas' demands. Diaz also claims that an assistant to the mayor of his town learned that guerrillas had stayed in Diaz's home, and that if government forces were made aware of this, they would kill him and his family. Administrative Record (A.R.) 112. Diaz claims that other families that had helped the guerrillas had subsequently disappeared, and that he feared his family would suffer the same fate. *Id.*

Diaz fled with his family to Mexico in 1983. He entered the United States in 1993. His family, however, moved back to Guatemala in 1998, two years after the civil war ended with a peace accord. His parents now live in Guatemala, as do his sister and her family. His two brothers live in Mexico and send money to support their family in Guatemala. Diaz also supports his family with money earned in the United States. Diaz's two brothers travel back and forth between Mexico and Guatemala to visit their family several times each year.

Diaz timely filed his application for asylum within one year of entry. He asserted as a basis for his asylum claim that he had fled Guatemala to escape retribution for his family's aid to the

guerrillas during the civil war, and that he feared future persecution for this same reason. The immigration judge (IJ) found Diaz credible, but concluded that he was not entitled to asylum or withholding of removal because he had suffered no past persecution and was never harmed by either government or guerrilla forces. The IJ also held that because Diaz's parents and sister now live in Guatemala, and his brothers regularly visit them there, without suffering persecution by the government or anyone else, Diaz had failed to establish a well-founded fear of future persecution, and had failed to establish a nexus between any past persecution and one of the five categories protected under the Act: race, religion, nationality, membership in a particular social group, and political opinion. *See* 8 U.S.C. § 1101(a)(42)(A). The IJ noted that neither Diaz nor any member of his family was ever tortured, and that Diaz could not establish any objectively reasonable basis to fear future torture or persecution, should he return to Guatemala. The IJ also considered country conditions materials and concluded that although Diaz claimed he would be targeted by criminals because of his relative affluence, a general fear of crime was not enough to support an asylum claim, especially since Diaz did not establish that the government would be unable or unwilling to protect him and his family. Diaz did not meet the burden of proving a well-founded fear of future persecution. For all of these reasons, the IJ denied Diaz's application.

The Board of Immigration Appeals affirmed the IJ's decision, finding that Diaz had failed to establish a nexus between any past or feared future harm and one of the statutorily protected grounds. The board held that although Diaz claimed past persecution, he failed to establish a link between that persecution and his ethnicity or attributed political affiliation. In addition, the board

found Diaz's claim of future persecution lacked merit because his family had returned to live in Guatemala without suffering persecution.

The board determined that Diaz's request for humanitarian relief was beyond their authority to grant because such authority belonged to the Department of Homeland Security (DHS). Diaz's "pattern or practice" claim was raised only in his counsel's closing statement, and the board concluded that the claim was meritless because the threat of harm to the Mam ethnic group in Guatemala, by government or other forces, was not systematic and pervasive enough to amount to a pattern or practice of persecution. Finally, the board determined that Diaz could not obtain relief under the Convention Against Torture because he had not shown that he ever had been or was likely to be tortured.

The board's determination that Diaz does not qualify for asylum is supported by substantial evidence because (1) Diaz did not establish that he was actually persecuted or that he has a well-founded fear of future persecution, and (2) Diaz did not establish a nexus linking the alleged persecution he suffered (or fears he will suffer) to his membership in a particular social group. To be granted asylum under the Immigration Act, an applicant must qualify as a "refugee" as defined under 8 U.S.C. § 1101(a)(42)(A). *Kouljinski v. Keisler*, 505 F.3d 534, 541 (6th Cir. 2007). In order to qualify as a refugee, Diaz must show that he "has suffered past persecution on the basis of race, religion, nationality, social group, or political opinion . . . [or show that he] has a well-founded fear of [future] persecution on one of those same bases." 8 C.F.R. § 1208.13(b). We review the board's

findings of fact for substantial evidence and its conclusions of law de novo. *Al-Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009).

Diaz has provided no evidence that he suffered past persecution in Guatemala since, by his own account, neither he nor any member of his family was ever arrested, detained, interrogated, or otherwise harmed or threatened with harm. As the board noted, Diaz and his family fled to Mexico based only on a subjective fear of possible future harm. Furthermore, Diaz's claim that he fears future persecution in Guatemala appears unreasonable in light of the fact that his parents and sister have all returned to live there, and his brothers regularly visit them there. In a similar situation, the Third Circuit concluded that "when family members remain in petitioner's native country without meeting harm . . . the reasonableness of a petitioner's well-founded fear of future persecution is diminished." *Lie v. Ashcroft*, 396 F.3d 530, 537 (3d Cir. 2005).

The board's determination that Diaz has not established a nexus between the alleged persecution and a statutorily protected category is also supported by substantial evidence. Although Diaz claimed that he would be targeted because of his family's coerced aid to the guerrillas during the civil war, he provided no direct or circumstantial evidence substantiating his belief that the Guatemalan government would assume he and his family were guerrilla sympathizers and target him in reprisal. Diaz also does not claim that he suffered past persecution or fears future persecution on

account of his ethnicity, or because of his affluence.[1]  Because Diaz has not met the requirements

for refugee status, he does not qualify for asylum.

The board's conclusion that Diaz does not qualify for withholding of removal under the

Immigration Act is also supported by substantial evidence.  Under the Act, applications for

withholding are evaluated under the same framework as asylum claims, but with a higher standard

of proof:  Diaz "must show a 'clear probability' of persecution, *Dugboe v. Holder*, 644 F.3d 462,

472 (6th Cir. 2011), a standard that "is more stringent than the "well-founded fear of persecution"

standard used in asylum cases." *Zhao v. Holder*, 569 F.3d 238, 246 n.10 (6th Cir. 2009).  Because

Diaz cannot meet even the lower standard of proof to show persecution for asylum purposes, he

clearly cannot meet the higher standard of proof to show persecution for withholding of removal.

*See Pilica v. Ashcroft*, 388 F.3d 941, 954 (6th Cir. 2004).

The board's finding that Diaz does not qualify for relief under the Convention Against

Torture is supported by substantial evidence because Diaz has not shown "that it is more likely than

not that he . . . would be tortured if removed to the proposed country of removal."  8 C.F.R. §

1208.16(c)(2).  By Diaz's own account, neither he nor any member of his family has ever been

tortured or threatened with torture by state actors, and he presents no direct or circumstantial

evidence that suggests his fear of torture by government forces is objectively reasonable.  Diaz's

subjective fear of being targeted by criminals and other private actors has no bearing on his claims

---

[1] The board rejected Diaz's meritless argument that he qualified for refugee status because he feared persecution on account of his affluence.  He does not raise a similar claim here.

under the Convention because the Convention provides relief only for those who have been tortured "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." *Negusie v. Holder*, 555 U.S. 511, 536 n.6 (2009). Diaz cannot obtain relief under the Convention.

The board determined that it lacked the authority to grant Diaz humanitarian asylum. This was legally correct in the nonjurisdictional sense that Diaz was not eligible for such relief, such that the board rightly concluded that the only available relief of a humanitarian nature "resides with the DHS and neither the Immigration Judge nor the Board has such authority." A.R. 4 ¶3.

In rare instances, an applicant may be eligible for asylum where he "has suffered under atrocious forms of persecution," even where there is little likelihood of future persecution. *Matter of Chen*, 20 I. & N. Dec. 16, 19 (B.I.A. 1989); *see Vaduva v. INS*, 131 F.3d 689, 690 (7th Cir. 1997) (explaining that it is a "rare case where past persecution is so severe that it would be inhumane to return the alien to his native country even in the absence of any risk of future persecution."). This rule was codified in 8 C.F.R. § 1208.13(b)(1)(iii), which provides:

> An applicant described in paragraph (b)(1)(i) of this section who is not barred from a grant of asylum under paragraph (c) of this section, may be granted asylum, in the exercise of the decision-maker's discretion, if:
> (A) The applicant has demonstrated compelling reasons for being unwilling or unable to return to the country arising out of the severity of the past persecution; or
> (B) The applicant has established that there is a reasonable possibility that he or she may suffer other serious harm upon removal to that country.

Diaz claims that he qualifies for humanitarian asylum under (B), the "other serious harm" prong. He argues that even if the harm he faces in Guatemala does not qualify as "persecution," it still

qualifies as "other serious harm." In other words, he contends that any harm suffered need not rise to the level of "persecution." But contrary to his argument, we have explained that the "[other serious harm] provision provides a second avenue of relief for *victims of past persecution* whose fear of future persecution on account of a protected ground has been rebutted by evidence of changed country conditions or of safe harbors within his or her home country." *Liti v. Gonzales*, 411 F.3d 631, 641-42 (6th Cir. 2005); *see Hamida v. Gonzales*, 478 F.3d 734, 740-44 (6th Cir. 2007). It is true that asylum may be appropriate for applicants who were persecuted in the past and risk future persecution on non-statutory grounds. *See Hamida*, 478 F.3d at 741; *Liti*, 411 F.3d at 642. However, as explained above, Diaz has failed to offer credible evidence that he was ever persecuted in Guatemala. Therefore, his claim for humanitarian asylum must fail.

The board rejected Diaz's "pattern or practice" claim and provided a sufficiently reasoned explanation for its decision. The board held that the threat of harm to the Mam people in Guatemala, by government-controlled or government-directed forces, was not "so systemic and pervasive as to amount to a pattern or practice of persecution." A.R. 4 ¶4. (citing *Matter of A- M-*, 23 I. & N. Dec. 737, 741 (B.I.A. 2005)). This more than meets the requirements of due process for board review of an immigration judge's decision, because "the board has no duty to write an exegesis on every contention." *Scorteanu v. I.N.S.*, 339 F.3d 407, 412 (6th Cir. 2003). It need only "consider the issues raised, and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." *Id.* Due process is not violated even if the

board admittedly "disposed of [the petitioner's] appeal in a perfunctory manner." *Akhtar v. Gonzales*, 406 F.3d 399, 408 (6th Cir. 2005).

We have upheld board decisions that have included similarly brief treatment of claims. In *Mbodj v. Holder*, 394 F. App'x 239, 245 (6th Cir. 2010), we recognized that "the [board's] consideration of this issue is extremely brief, consisting of only the conclusory statement that [relief] was not merited and the citation to the two cases in support," yet we nevertheless affirmed because the precedent cited in the board's decision clearly indicated that the petitioner's claim did not merit relief. Here, the board rejected Diaz's argument after considering the evidence on the record, cited similar precedent, and reasonably concluded that the standard of "systemic and pervasive" harm required to establish a pattern or practice of persecution had not been met. This was sufficient.

Diaz's argument that the immigration judge "completely avoided" the pattern or practice claim furthermore does not take into account that Diaz raised this issue only briefly in his closing argument before the IJ. *See* A.R. 163-64. Moreover, the IJ considered the country conditions report in his decision, *see* A.R. 38, and the board referred to the record, which includes that information, when it affirmed the IJ's decision. The board directly addressed the "threat of harm to people of Mam ethnicity in Guatemala," *see* A.R. 4 ¶4, contradicting Diaz's argument that the decision "solely focuses its analysis upon whether the alien has been singled out for past persecution." Diaz's Br. at 19. Diaz's contention that the board provided insufficient reasons for denying his pattern or practice claim is meritless.

The petition for review of the Board of Immigration Appeals' decision is denied.