NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 21a0323n.06

Case No. 20-4270

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| TAQUIR NIAZI, | ) | **FILED** |
| Petitioner, | ) | Jul 08, 2021 |
|  | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | ON PETITION FOR REVIEW |
|  | ) | FROM THE UNITED STATES |
| MERRICK B. GARLAND, Attorney General, | ) | BOARD OF IMMIGRATION |
| Respondent. | ) | APPEALS |
|  | ) |  |

Before: GUY, GIBBONS, and GRIFFIN, Circuit Judges.

**RALPH B. GUY, JR., Circuit Judge.** An Immigration Judge (IJ) denied Taquir Niazi's application for cancellation of removal because he failed to establish that his "removal would result in exceptional and extremely unusual hardship" to any of his three U.S. citizen daughters. 8 U.S.C. § 1229b(b)(1)(D). The Board of Immigration Appeals (BIA) adopted and affirmed the IJ's decision. Niazi now petitions this court for review. The thrust of his argument is that neither the IJ nor the BIA specifically discussed his second daughter's self-harming behavior and that "he is the only one who is able to dissuade his daughter's self-injury." We DENY the petition for review.

## I.

Niazi, a native and citizen of Pakistan, came to the United States in July 1999 on a six-month nonimmigrant visitor's visa. When Niazi's visa expired, he remained in the United States without authorization. It was not until March 2010 that the Department of Homeland Security

(DHS) charged Niazi with removal under 8 U.S.C. § 1227(a)(1)(B). Niazi appeared before an IJ in December of that year and, through counsel, conceded that he was removable as charged. Two months later, Niazi applied for cancellation of removal, alleging that his removal "would result in exceptional and extremely unusual hardship" to his spouse and two children, all of whom are U.S. citizens. *See* § 1229b(b)(1)(D). Niazi then submitted an updated application in December 2016, noting the birth of his third U.S. citizen daughter in 2012 and his divorce from his U.S. citizen wife in 2016. In January 2017, Niazi testified at a hearing on the merits of his updated application. At the end, the government offered to exercise prosecutorial discretion and stay the case until further notice. Niazi accepted, and the IJ "administratively closed" the case.

On December 24, 2019, local police responded to a domestic assault call. They arrested Niazi after an officer saw a small laceration on the second daughter's bottom lip and she explained that Niazi had come "into her room, grabbed her by the hair and dragged her out of bed," and "then held her down, punched her with a closed fist in the head and slapped her across the face." Niazi was charged with fourth-degree child abuse. DHS then took Niazi into custody and moved the immigration court to re-calendar Niazi's removal proceedings. The IJ granted that unopposed motion. Around the same time, in January 2020, the Michigan prosecutor dismissed the child abuse charges against Niazi, after his second daughter recanted her police statement.

## A.    March 2020 Cancellation of Removal Hearing

A hearing on Niazi's renewed application for cancellation of removal was held on March 31, 2020. Niazi testified that the custody order in his 2016 divorce had not changed, meaning that he had shared legal custody of his three daughters. If deported, his three daughters would remain in the United States and his ex-wife would obtain sole legal custody. Niazi reported that only the youngest child was presently living with him. His second daughter—the child at issue here—was

living with Niazi's ex-wife. When Niazi was questioned about why his second daughter began living with his ex-wife, Niazi responded that his daughter moved after being arrested and charged for assaulting his then-fiancée (currently his wife) in early March 2020. Niazi's fiancée had attempted to take Niazi's second daughter to a counseling appointment, but she refused to go, became upset, and punched Niazi's fiancée in the face. Before the altercation, Niazi's two youngest daughters were living with him and his fiancée.

Niazi also testified that his second daughter has an "anger problem" and "[s]he likes to harm herself. . . . [and] cut herself . . . ." Niazi's testimony that she engaged in self-harming behavior was corroborated by a police report. Niazi's daughter also allegedly had some periodic problems with aggressiveness toward students, vandalism, and school attendance. Niazi explained that he "usually take[s] her to counseling about twice a month" and estimated that she had been going to counseling since May 2019.

On cross-examination, Niazi stated that he accompanied his second daughter to appointments with her general physician. The government pointed out that the questionnaires for these visits stated that Niazi's second daughter had no discipline or behavioral issues. Niazi recalled that his daughter told the doctor that she did not feel depressed, anxious, or suicidal. Niazi then claimed that, although his two youngest daughters were not taking medication, they were both "bipolar." But when the IJ further questioned Niazi, he admitted that a doctor had never diagnosed any of his daughters with bipolar disorder. The IJ also asked Niazi about several medical questionnaires from the preceding twelve months and the answers to numerous specific questions, which stated *inter alia* that his second daughter had "no" discipline, behavioral, or suicidal concerns; she was "not at all" feeling depressed or hopeless; she was "not at all" having thoughts of hurting herself in some way; and she was "not at all" engaging in "self-injury" or purposefully

harming her body, such as "cutting" or "burning." But Niazi could not remember these questions or whether he was in the room with his daughter when the doctor asked these questions. In defense, Niazi clarified that sometimes his fiancée took his daughter to the appointments.

Niazi's now-wife also testified. She confirmed that Niazi's second daughter was still living with Niazi's ex-wife. She detailed the circumstances of the March 2020 altercation between herself and Niazi's second daughter. She also explained that she or Niazi (or both) would take Niazi's second daughter to counseling and general-physician appointments, and that she, Niazi, and his daughter would all go into the examination room with the doctor.

Niazi's second daughter was noted on the witness list for the hearing, but she did not appear and did not testify.

### B.     The IJ's Decision

On April 17, 2020, the IJ issued an oral decision denying Niazi's cancellation of removal application for failure to demonstrate "exceptional and extremely unusual hardship" for "any of [his three] children," who were 17, 14, and 8 years of age at the time. The IJ reached this conclusion after discussing the circumstances facing each of Niazi's three children. As relevant here, the IJ stated that Niazi's second daughter "is a teenager whose troubles started before the re-calendaring" of this case; she has "been in counseling"; and as a result of the incident between her and Niazi's fiancée, she "continues to reside" with Niazi's ex-wife. In concluding that Niazi had failed to satisfy the hardship requirement for "any of [his] children," the IJ found that: (1) Niazi's daughters "will stay in the United States and will have the options of residing with their biological mother" or possibly Niazi's wife; (2) Niazi's daughters will remain in the same schools and "will have the same healthcare and counseling options as they have now"; and (3) there was an "absence of counseling records and counseling opinions from medical professionals" in the record. While

the IJ acknowledged that Niazi's removal would limit his ability to financially support and socially interact with his children, the IJ concluded that was insufficient to meet the hardship standard. As a result, the IJ denied Niazi's application and ordered Niazi removed to Pakistan.[1]

### C.    The BIA's Decision

On November 4, 2020, the BIA "adopt[ed] and affirm[ed] the [IJ's] decision that [Niazi] did not establish that his removal would result in exceptional and extremely unusual hardship to his qualifying relatives." The BIA further noted that, contrary to Niazi's contention, the IJ "specifically considered" the "mental health and behavioral issues" of Niazi's daughters. The BIA also stated that, as noted by the IJ, there is "insufficient evidence to establish that [Niazi's daughters] would not have access to any mental health services that they may need."

Niazi petitions this court for review.

### II.

Where "the BIA reviews the IJ's decision and issues a separate opinion, rather than summarily affirming the IJ's decision, we review the BIA's decision as the final agency determination." *Gonzalez-De Leon v. Barr*, 932 F.3d 489, 492 (6th Cir. 2019) (quoting *Al-Ghorbani v. Holder*, 585 F.3d 980, 991 (6th Cir. 2009)). "To the extent that the BIA has adopted the IJ's reasoning, however, we also review the IJ's decision." *Id.* (quoting *Al-Ghorbani*, 585 F.3d at 991). Here, the BIA "adopt[ed] and affirm[ed] the [IJ's] decision." We therefore directly review the IJ's decision while considering any additional comments made by the BIA.

The Attorney General has the discretion to cancel Niazi's removal if Niazi establishes four requirements. 8 U.S.C. § 1229b(b); *Singh v. Rosen*, 984 F.3d 1142, 1151 (6th Cir. 2021). To be

---

[1] The IJ also denied Niazi's request for voluntary departure. But Niazi does not raise that issue now, and he did not raise it before the BIA.

eligible for such discretionary relief, it is Niazi's burden to prove that: (1) he "has been physically present in the United States for a continuous period of not less than 10 years"; (2) he "has been a person of good moral character during such period"; (3) he "has not been convicted" of certain criminal offenses; and (4) his "removal would result in exceptional and extremely unusual hardship to [his] spouse, parent, or child," who is either a citizen or lawful permanent resident of this country. § 1229b(b)(1); *see also Pereida v. Wilkinson*, 141 S. Ct. 754, 760 (2021). The only issue here concerns the fourth requirement relative to Niazi's second daughter.

As a preliminary matter, the parties disagree on the appropriate standard of review. Niazi contends that the IJ's (and BIA's) hardship determination is reviewed for an abuse of discretion. *Cf. Thompson v. Lynch*, 788 F.3d 638, 642 (6th Cir. 2015). The government, however, argues that the appropriate standard of review is the "compelling evidence" standard (which is also referred to as the substantial evidence standard). *See* 8 U.S.C. § 1252(a)(2)(D), (b)(4)(B); *cf. Daneshvar v. Ashcroft*, 355 F.3d 615, 624 (6th Cir. 2004); *Ahmed v. Gonzales*, 398 F.3d 722, 725 (6th Cir. 2005).

This is an open question for this court. After *Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1068-72 (2020), we recently held that the hardship determination in cancellation-of-removal cases is a "mixed question" of law and fact, *i.e.*, "whether the facts found by the immigration judge rise to the level of hardship required by the legal test." *Singh*, 984 F.3d at 1150. This court further held in *Singh* that "we have jurisdiction to review the [BIA]'s ultimate hardship conclusion." *Id*. But we "still cannot review any of the factual findings underlying" the hardship determination. *Id.* at 1149, 1154; *accord Guerrero-Lasprilla*, 140 S. Ct. at 1073. The court in *Singh* observed that our review of the hardship determination "likely should be deferential," but ultimately concluded that it was unnecessary to decide which specific standard of review governed. 984 F.3d at 1154.

As in *Singh*, we need not decide the issue. Niazi cannot prevail under any standard.

The IJ and the BIA articulated the correct legal standard for hardship. "[E]xceptional and extremely unusual hardship" under § 1229b(b)(1)(D), is "hardship that is substantially different from, or beyond, that which would normally be expected from the deportation of an alien with close family members" in this country. *In re Monreal-Aguinaga*, 23 I. & N. Dec. 56, 65 (B.I.A. 2001). Courts may consider: (1) the ages, health, and circumstances of the qualifying relatives; (2) family and community ties in the United States and abroad; and (3) any adverse conditions in the country of return. *See id.* at 63-64. These factors must be "considered in the aggregate," but the factors "can only be considered insofar as they may affect the hardship to a qualifying relative." *Id.* at 63-64; *accord Montanez-Gonzalez v. Holder*, 780 F.3d 720, 723 (6th Cir. 2015); *In re Gonzalez Recinas*, 23 I. & N. Dec. 467, 472 (B.I.A. 2002). This is a "very high" bar to relief, *In re Andazola-Rivas*, 23 I. & N. Dec. 319, 322 (B.I.A. 2002), which is intentionally difficult to meet: Congress intended such relief "to be limited to 'truly exceptional'" and "very uncommon" situations, *see Monreal-Aguinaga*, 23 I. & N. Dec. at 59-62 (citation omitted) (discussing legislative history). Niazi has not cleared that high bar.

First, Niazi contends the IJ and the BIA failed to specifically "discuss" his second daughter's self-harming behavior and that "he is the *only one* who is able to dissuade his daughter's self-injury." (Emphasis added).[2] In support, Niazi points to his testimony that "[s]he likes to cut herself and, and that she just like to hurt herself and that's about it," and his testimony that he

---

[2] It is not until his reply brief that Niazi clearly states his position. In his opening brief, Niazi issues a blanket indictment, arguing that the IJ "utterly failed to," and did not "even touch on," "his principal argument and evidence" that if he is removed his second daughter would suffer "exceptional and extremely unusual hardships." (Pet'r Br. 8, 11-12.) He assigns the same error to the BIA because, Niazi maintains, the BIA simply "rubberstamp[ed] the [IJ]'s decision." (Pet'r Br. 13.)

"usually take[s] her to counseling about twice a month." But this argument is meritless.

As a matter of law, immigration courts are not required to spill ink in a tit-for-tat analysis of each argument and piece of evidence a petitioner raises. *See, e.g.*, 8 C.F.R. § 1240.58(a) (establishing that "[a]djudicators . . . are not required to offer an independent analysis of each listed [hardship] factor when rendering a decision"); *Stserba v. Holder*, 646 F.3d 964, 978 (6th Cir. 2011) (explaining that "the BIA is not required to parse or refute on the record every individual argument or document offered by the petitioner" (citation omitted)); *see also Kilic v. Barr*, 965 F.3d 469, 474 (6th Cir. 2020); *accord Scorteanu v. INS*, 339 F.3d 407, 412 (6th Cir. 2003).

The IJ here stated that there was "a substantial amount of testimony" that Niazi's second daughter "is a teenager whose troubles started before the re-calendaring" of this case (*i.e.*, before DHS detained Niazi); she has "been in counseling"; and as a result of the incident between her and Niazi's wife (when she refused to go to counseling), she "continues to reside" with Niazi's ex-wife. Despite Niazi's testimony on these issues, the IJ placed weight on the "absence of counseling records and counseling opinions from medical professionals." The IJ also made two other factual findings: (1) Niazi's daughters "will stay in the United States and will have the options of residing with their biological mother" or possibly Niazi's wife; and (2) Niazi's daughters will remain in the same schools and "will have the same healthcare and counseling options as they have now." The IJ weighed all of these factors "in the aggregate," and concluded that, in the event Niazi is removed, none of his children would suffer "exceptional and extremely unusual hardship." In adopting and affirming the IJ's decision, the BIA rejected the same argument Niazi offers this court, concluding that "the [IJ] specifically considered the evidence in the record" pertaining to the "mental health and behavioral issues" of Niazi's daughters. An immigration court need only "consider the issues raised, and announce its decision in terms sufficient to enable a reviewing court to perceive that it

has heard and thought and not merely reacted." *Scorteanu*, 339 F.3d at 412. Here, the IJ (and the BIA) said enough.

Beyond that, Niazi's assertions are also factually flawed. There is no evidence that "only" Niazi can help his second daughter. Nor is there evidence to suggest that her self-harm will become worse or unmanageable if she is not under Niazi's care. In fact, the evidence indicates the contrary. Niazi's daughter has not been living with Niazi since she was arrested in March 2020 and elected to move in with her mother, Niazi's ex-wife. So even if Niazi remains in this country, it is unclear what role he would play in curbing his daughter's alleged self-harm.

Second, Niazi asserts that the BIA's decision "contradicts prior controlling BIA caselaw." But Niazi does not cite any BIA case law. Rather, he cites *Matter of B-J-N-*, 2016 WL 4072971, at *1 (AAO July 7, 2016), and *Matter of C-M-Q-*, 2016 WL 5943738, at *1 (AAO Sept. 23, 2016). Both cases are designated as a "Non-Precedent Decision of the Administrative Appeals Office" (AAO) of DHS. Those cases have no precedential value. *See* 8 C.F.R. §§ 1003.1(g)(2), 103.3(c). Niazi's argument fails for that reason alone.

But even so, both cases are readily distinguishable. In *Matter of B-J-N-*, the petitioner testified that his spouse had not been working and suffered from depression and thoughts of self-harm; he submitted corroborating evidence, including a letter from a licensed social worker, a letter from his spouse's obstetrician, medical records, and a psychological evaluation; the spouse testified; and the family's general physician testified as to the hardship the children would suffer. 2016 WL 4072971, at *4-5. There, the petitioner made the necessary hardship showing because his spouse would be required to deal with her psychological issues and "rais[e] their two children on her own." *Id.* at *5. Similarly, in *Matter of C-M-Q-*, there were letters from therapists, corroborating that at least one of the petitioner's U.S. citizen children "had developed an anxiety

issue causing her to self-harm," and one therapist "strongly recommended not disrupting the children's bonds with the [petitioner] to prevent potential secondary disabilities." 2016 WL 5943738, at *4-5. Here, there are no "counseling records [or] counseling opinions from medical professionals" to support Niazi's testimony, and the medical records that do exist contradict his bald assertions. There is no error here.

\*    \*    \*

The petition for review is DENIED.