RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0187P (6th Cir.)
File Name: 03a0187p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

ELISEO CAYABYAB BELTRAN,
*Petitioner,*

*v.*                                     No. 02-3230

UNITED STATES IMMIGRATION
& NATURALIZATION SERVICE,
*Respondent.*

On Petition for Review of an Order of the
Board of Immigration Appeals.
No. A35 574 536.

Submitted: March 28, 2003

Decided and Filed: June 9, 2003

Before: BOGGS, SUHRHEINRICH, and SILER, Circuit
Judges.

---

### COUNSEL

**ON BRIEF:** Paul D. Reingold, MICHIGAN CLINICAL
LAW PROGRAM, Ann Arbor, Michigan, for Petitioner.
Daniel E. Goldman, Emily A. Radford, UNITED STATES
DEPARTMENT OF JUSTICE, Washington, D.C., for
Respondent.

---

### OPINION

---

SUHRHEINRICH, Circuit Judge.    Appellant Eliseo
Cayabyab Beltran, a resident alien native of the Philippines,
appeals from the February 20, 2002 decision of the Board of
Immigration Appeals (BIA) affirming the August 27, 2001
decision of the Immigration Court (IC) denying Beltran's
motion to re-open his case following the IC's order of
deportation against Beltran, entered *in absentia* when Beltran
failed to appear at a January 20, 1999, deportation hearing.

Beltran claims that the IC abused its discretion in not re-
opening his case and granting his motion under
§§ 1229a(b)(5)(A) and (C), because the INS did not establish
"by clear, unequivocal, and convincing evidence" that written
notice of his deportation hearing was sent to the last address
provided by Beltran. 8 U.S.C. § 1229a(b)(5)(A). Specifically,
Beltran claims that he did not receive notice of the
deportation hearing because the BIA continued to send all
correspondence to Beltran's out-dated address, in spite of the
fact that Beltran had notified it, in writing, of his new address.

We reverse the decision of the BIA and remand this cause
to the IC with instructions to grant Beltran's motion to re-
open his case.   We find that Beltran had met the statutory
requirements of 8 U.S.C. § 1229(a)(1)(F), and notified the
INS, in writing, of a change in his address.

### I.   Facts

Beltran was born in the Philippines in 1963, and legally
entered the United States on November 30, 1977, at the age
of fourteen.   On August 28, 1981, Beltran was convicted of
larceny in Ann Arbor, Michigan, in violation of Mich.
Compiled Laws Annot. § 750.360.   He was sentenced to one
year in prison. On December 29, 1992, Beltran was convicted
of first degree retail fraud, again in Ann Arbor, Michigan,

under Mich. Compiled Laws Annot. § 750.356c. He was sentenced to a fine and three years' probation.

On July 27, 1994, the Department of Justice issued an "Order to Show Cause and Notice of Hearing" to Beltran and subsequently scheduled a deportation hearing, seeking to remove Beltran under § 241(a)(2)(A)(ii) of the version of the Immigration and Naturalization Act (INA) in place at that time. 8 U.S.C. § 1251(a)(2)(A)(ii) (1994). That section provided for the automatic deportation of an alien who had been "convicted of two crimes involving moral turpitude not arising out of a single scheme of criminal misconduct."

Beltran received the notice and sought to obtain a waiver of deportability under § 212(c) of the INA, 8 U.S.C. § 1182(c) (1994). That section provided the ability for an alien, who is otherwise deportable, to request a waiver allowing him to remain in the country regardless of his convictions. The power to grant this waiver is at the sole and unfettered discretion of the IC.

The IC denied the § 212(c) request and ordered Beltran deported on February 12, 1996. Beltran appealed to the BIA which, on October 13, 1998, reversed and remanded the decision to the IC because the BIA found that the IC did not adequately explain to Beltran his right to counsel.

After the IC's original February 12, 1996, decision, Beltran apparently moved and established residence on Ecorse Road in Ypsilanti, Michigan. To report this, Beltran filed an EOIR-33 change of address form on August 5, 1996, informing the INS of his new address. He again filed an EOIR-33 form on September 17, 1996, duplicating the August 5 filing, and again providing Ecorse Road as his current address. However, sometime after September 17, 1996, Beltran moved from his residence on Ecorse Road to his sister's home on Carpenter Road, also in Ypsilanti. On February 14, 1997, Beltran had a personal representative from the Wayne County Neighborhood Legal Services ("WCNLS") send a letter to the INS, informing it of Beltran's new address. Beltran did not provide this change of address on an EOIR-33 form, and

notice of the BIA's favorable 1998 decision, as well as the notice of hearing on remand, were sent to the out-dated Ecorse Road address.

On January 20, 1999, Beltran's remand hearing was held, but Beltran was not present. The IC entered an order for deportation *in absentia*, pursuant to 8 U.S.C. § 1229a(b)(5)(A). That section provides that "[a]ny alien who, after written notice . . . does not attend a proceeding under this section, shall be ordered removed *in absentia* if the Service establishes by clear, unequivocal, and convincing evidence that the written notice was so provided . . . ."

On February 18, 2001, Beltran was detained by the INS, and held for deportation. Beltran filed a motion to re-open his case on March 21, 2001. Beltran argued to the IC that he had never received either the BIA's favorable decision, the IC's notice of hearing on remand, or the IC's order *in absentia*. Moreover, he claimed that the February 14, 1997 letter from the WCNLS satisfied his statutory duty to notify the INS of his whereabouts. He therefore argued that service of the notice of hearing on remand was not proper under 8 U.S.C. § 1229(c), which provides that a notice to appear, if served by mail, is sufficient if mailed "to the *last address provided by the alien* [in writing]." (emphasis added).

The IC denied his motion, acknowledging the INS's receipt of the WCNLS's 1997 letter, but noting that the person who signed the letter was not an attorney but a law school graduate who had not passed a bar examination.[1] The IC stated that "[t]here is nothing in this record that shows that either at the time or in the present that (Beltran) authorized this individual to act on his behalf." The WCNLS representative had not filed an appearance before the IC or the BIA, and the INS therefore claimed to have no idea who he was. Thus, the IC

---

[1] As discussed below, it is unclear how the INS could have known that Beltran's WCNLS representative was not a lawyer. He sent the 1997 letter on WCNLS letterhead and signed his name with the letters J.D. after it.

dismissed the WCNLS letter as non-compliant with the provisions of § 1229(a)(1)(F)(ii), which requires the alien to immediately provide a written notification of any change of address.

The BIA denied Beltran's direct appeal on February 20, 2002. Beltran filed a petition for review with this Court on February 25, 2002. Hence, his appeal is timely before this Court under Fed. R. App. P. 4(a)(1)(B). We granted Beltran a stay of deportation, pending this appeal, on March 26, 2002.

## II.   Standard of Review/Jurisdiction

We review the BIA's decision on a motion to re-open for an abuse of discretion. *See INS v. Doherty*, 502 U.S. 314, 323 (1992); *Ashki v. INS*, 233 F.3d 913, 917 (6th Cir. 2000).

Jurisdiction in this case is governed by the INA, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA). *See, e.g.*, *Pulice v. INS*, 218 F.3d 505, 507 (6th Cir. 2000). Originally, § 106 of the INA granted the federal courts jurisdiction to review all orders of deportation. 8 U.S.C. § 1105a (1994). However, in 1996, § 440 of the AEDPA amended § 1105a and limited federal jurisdiction. Courts could no longer review an order of deportation against an alien who was convicted of two crimes of moral turpitude if each crime was punished by at least one year of imprisonment. 8 U.S.C. § 1105a (1996).

The IIRIRA repealed § 1105a entirely, and implemented transitional rules. Section 309(c)(4)(G) of the IIRIRA applies to an alien, like Beltran, whose deportation proceedings began prior to enactment of the IIRIRA in 1996, but who received his order of deportation more than thirty days after enactment. Section 309(c)(4)(G) replaced § 1105a, yet similarly provides that:

> [T]here shall be no appeal permitted in the case of an alien who is inadmissible or deportable by reason of having committed a criminal offense covered in . . .

> section 241(a)(2)(A)(ii) of such Act (as in effect on such date) for which both predicate offenses are, without regard to their date of commission, otherwise covered by section 241(a)(2)(A)(i) of such Act (as so in effect).

As discussed above, § 241(a)(2)(A)(ii), as it existed at the time of the IIRIRA's enactment in 1996, rendered an alien deportable if he had been convicted of two crimes of moral turpitude, which were not part of a common scheme.[2] Accordingly, § 309(c)(4)(G) denies an appeal to an alien if his two crimes of moral turpitude were otherwise covered by § 241(a)(2)(A)(i), as it existed in 1996, which referenced a crime of moral turpitude for which the alien "either is sentenced to confinement or is confined therefor in a prison or correctional institution for one year or longer . . . ." 8 U.S.C. § 1251(a)(2)(A)(ii) (1996); *see also Pulice*, 218 F.3d at 507.[3]

The 1993 retail fraud conviction imposed no jail time at all on Beltran. Accordingly, because at least one of Beltran's convictions did not impose imprisonment of more than one year, his case is reviewable, and this Court holds jurisdiction.

---

[2] Section 305(a)(2) of the IIRIRA renumbered § 241(a)(2)(A) of the INA as § 237(a)(2)(A) of the INA. Section 309(c)(4)(G) clearly refers to the original § 241(a)(2)(A) (the new § 237(a)(2)(A)) because § 241(a)(2) no longer exists. Also, this change affected the section's codification within the United States Code. As amended, the relevant section is no longer codified at 8 U.S.C. § 1251(a)(2)(A), but at 8 U.S.C. § 1227(a)(2)(A).

[3] Section 435 of the AEDPA had amended the original § 241(a)(2)(A)(i) of the INA to refer to aliens who had been convicted of a crime of moral turpitude "for which a sentence of one year or longer *may* be imposed." 8 U.S.C. § 1227(a)(2)(A)(i)(II) (emphasis added). However, § 435(b) of the AEDPA states that this amendment shall "apply to aliens against whom deportation proceedings are initiated after the date of the enactment of this Act (September 30, 1996)." AEDPA § 435(b). Because Beltran's deportation proceedings began in 1994, we disregard § 435 and instead rely on the unamended version of § 241(a)(2)(A)(i), which requires *actual* sentencing or confinement of a year or more.

### III.   Analysis

An alien may file a motion to re-open his case pursuant to 8 U.S.C. § 1229a(b)(5)(C), after he has failed to appear at his deportation hearing. Under that section, the alien may file the motion at any time if he can demonstrate that his failure to appear was due to the fact that he did not receive notice. 8 U.S.C. § 1229a(b)(5)(C)(ii). Otherwise, he may only file a motion to re-open if he does so within 180 days and cites "exceptional circumstances." 8 U.S.C. § 1229a(b)(5)(C)(i).

When an alien fails to appear for his deportation hearing, the IC may enter an order of deportation *in absentia*, pursuant to § 1229a(b)(5)(A), but only if the INS establishes "by clear, unequivocal, and convincing evidence" that written notice of the hearing was provided to the alien in accordance with § 1229(a)(1). Under § 1229(a)(1), the INS may provide service of notice either to the alien in person, or through the mail to the alien or his counsel of record.

In order to show "clear, unequivocal, and convincing evidence" of mail service, the INS must follow the strictures of § 1229(c), which provides that "[s]ervice by mail under this section shall be sufficient if there is proof of attempted delivery to the *last address provided by the alien* in accordance with subsection (a)(1)(F) of this section." (emphasis added). In turn, § 1229(a)(1)(F) provides the requirement that the alien "must immediately provide (or have provided) the Attorney General with a written record of an address and telephone number (if any) at which the alien may be contacted respecting [removal proceedings]." 8 U.S.C. § 1229(a)(1)(F)(i). That section continues, providing that an alien must likewise provide a written record of any *change* in his address or telephone number. 8 U.S.C. § 1229(a)(1)(F)(ii).

The INS has provided sufficient proof that notice of the January 1999 hearing was sent to the Ecorse Road address at which Beltran had previously resided. This Ecorse Road address was provided by Beltran on a signed EOIR-33 form, dated July 31, 1996, and filed on August 5 of that year.

Beltran then filed another EOIR-33 form on September 17, 1996, again providing Ecorse Road as the correct address. This appears to be the last EOIR-33 form that Beltran completed and signed prior to his deportation proceedings. But Beltran disputes that the Ecorse Road address was the last address he provided to the INS. Instead, he claims that the address contained in the February 14, 1997 WCNLS letter constitutes the last address provided. That letter unequivocally stated that "Mr. Beltran's correct address is (the Carpenter Road address)." Moreover, the address was set off from the rest of the text, and the words "correct address" were in bold type.

The INS argues that the 1997 letter is not sufficient notice under the federal regulations. The pertinent regulation, 8 C.F.R. § 3.15(d)(2), provides that "[w]ithin five days of any change of address, the alien must provide written notice of the change of address *on Form EOIR-33* to the Immigration Court where the [Order to Show Cause had] been filed, or if venue has been changed, to the Immigration Court to which venue has been changed." (emphasis added).

The Attorney General has the authority to issue regulations pertaining to immigration and naturalization under 8 U.S.C. § 1103. *See also* 8 C.F.R. § 2.1. Generally, we defer to the regulations when determining how to interpret a statute, as long as the regulations present a reasonable interpretation of the statute. *See Intermet Corp. & Subsidiaries v. Commissioner*, 209 F.3d 901, 904 (6th Cir. 2000). That is, the regulation must "implement the congressional mandate in some reasonable manner." *United States v. Correll*, 389 U.S. 299, 307 (1967). Under 8 U.S.C. § 1103, the Attorney General is granted only general power to issue regulations. Thus, we owe his interpretation less deference than if he had a specific grant of authority to define a statutory term or prescribe a specific method of handling a provision. *See United States v. Vogel Fertilizer Co.*, 455 U.S. 16, 24 (1982); *Rowan Cos. v. United States*, 452 U.S. 247, 253 (1981). Here, 8 C.F.R. § 3.15 goes beyond the statute and adds a requirement to 8 U.S.C. § 1229(a) that the alien must provide

his change of address, not only in writing, but on a specific form. Thus, § 3.15 is not a mere interpretation of the statute, but an addendum. Accordingly, we do not find that 8 C.F.R. § 3.15 represents a reasonable interpretation of the statute because it adds additional requirements not contemplated by Congress.

Thus, it is only requisite that Beltran provide written notice of his change of address, which he purports he did on February 14, 1997. The INS further argues, however, that even if a letter were sufficient to satisfy § 1229(a), this particular letter was insufficient because it was sent, not by Beltran, but by a non-lawyer law graduate representing Beltran. The INS asserts that it had no reason to know or believe that this individual was authorized to speak on Beltran's behalf. However, the letter contains several indicia of reliability. First, the letter appears on WCNLS letterhead. Beltran had sent the INS a letter on December 2, 1996, informing it that WCNLS had agreed to represent him on appeal and remand. Second, the INS had served a February 7, 1997 motion before the BIA on the WCNLS. We find this service indicative of the INS's acknowledgment that the WCNLS was representing Beltran. Third, the WCNLS representative attached Beltran's last change of address form to the letter, indicating that he was in close contact with Beltran and had access to his documents.

Moreover, it is irrelevant that Beltran's representative was not a lawyer. The Immigration regulations allow for the representation of aliens by law graduates who have yet to pass a bar examination. The law graduate is required to file a statement that he is appearing under the supervision of a licensed attorney, and that he is appearing without remuneration from the alien. 8 C.F.R. § 292.1(a)(2)(iii). The official before whom the law graduate is appearing— here, the Immigration Judge— must give his permission for the law graduate to represent the alien. 8 C.F.R. § 292.1(a)(2)(iv). Beltran's WCNLS representative never filed the required statements and never received permission. Hence, the WCNLS representative was not technically qualified to

represent Beltran. However, the fact that Beltran's WCNLS representative was, at the time, incapable of speaking for Beltran does not give the INS leeway to disregard the WCNLS's letter as notice. Section 1229(a) requires notice, yet does not place any restrictions on who may provide that notice. Furthermore, the INS had no reason to know at the time that Beltran's representative was a law graduate, and not a lawyer. He had sent the 1997 letter on WCNLS letterhead, and signed his name with the letters J.D. afterward. Accordingly, the INS's argument that Beltran's letter lacked credibility because it was sent by an unnoticed law graduate is unpersuasive, and apparently developed after the fact, because the INS had no reason to know he was not a lawyer.[4]

Beltran raises the Eighth Circuit case of *Kamara v. INS*, 149 F.3d 904 (8th Cir. 1998) (per curiam). In *Kamara*, an alien from Sierra Leone moved from Minnesota to Maryland prior to notification of the date of her deportation hearing. Upon arriving in Maryland, Kamara had her non-lawyer uncle deliver a letter to the INS in Virginia, indicating that Kamara was now staying with him, and provided his Maryland address. The notice of hearing was sent to the out-dated Minnesota address, and Kamara, naturally, failed to appear at the hearing. A deportation order *in absentia* was entered. Over two years later, Kamara learned of the deportation order and filed a motion to re-open. The IC denied the motion and the BIA affirmed. *Id.* at 905. However, the Eighth Circuit reversed the BIA and granted the motion, finding that the letter provided by Kamara's uncle was sufficient notice under the predecessor to § 1229(a)(1)(F). We agree with the Eighth Circuit, and find that the notice requirement of § 1229(a)(1)(F) is not meant to be an overly burdensome requirement. If the alien provides, or causes to be provided, notice of a change of address in writing, he has satisfied the statute.

---

[4] Lawyers are likewise required to enter an appearance under 8 C.F.R. § 3.38(g). But, again, whether Beltran's WCNLS representative properly entered his appearance has no bearing on whether Beltran had provided notice of his new address.

Because we find that Beltran had satisfied the requirements of § 1229(a), we have no occasion to address Beltran's constitutional due process argument. We hereby reverse the decision of the BIA and remand this cause to the IC with instructions to grant Beltran's motion to re-open his deportation hearing.

We express no opinion on the underlying merits of this case, as to whether Beltran's discretionary waiver should be granted.

### IV.   Conclusion

For the foregoing reasons, we REVERSE the decision of the Board of Immigration Appeals, and REMAND this cause to the Immigration Court.