NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0404n.06
Filed: July 7, 2008

No. 06-4513

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| ELISEO CAYABYAB BELTRAN, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | ON PETITION FOR REVIEW |
| v. | ) | FROM THE BOARD OF |
| | ) | IMMIGRATION APPEALS |
| MICHAEL MUKASEY, | ) | AFTER REMAND BY THE |
| | ) | SIXTH CIRCUIT |
| Respondent-Appellee. | ) | |
| _____ | ) | |
| | ) | |
| | ) | |

BEFORE:     GILMAN and COOK, Circuit Judges; and COHN[*], District Judge.

**AVERN COHN, District Judge.**  This is an immigration case that began almost fifteen years ago. Appellant Eliseo Cayabyab Beltran ("Beltran") now appeals from a final order of deportation issued against him by the Board of Immigration Appeals ("BIA").  Beltran contends that he is eligible for discretionary relief from deportation under former § 212(c) of the Immigration and Nationality Act, 8 U.S.C. § 1182(c), and that his case should be remanded to the immigration court to consider the merits of this claim.  The government argues that Beltran is ineligible for relief under the terms of the statute.

For the reasons discussed below, we reverse the decision of the BIA and remand for consideration of the merits of Beltran's petition for relief under § 1182(c).

_____

[*]The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation.

## I. Background and Procedural History

Beltran originally entered the United States as an immigrant in 1977, when he was fourteen years old, along with his parents and siblings. Prior to that time Beltran lived in the Philippines.

Since entering the United States, Beltran his been convicted of three crimes. He was first convicted of larceny of a building, Mich. Comp. Laws Ann. § 750.360, in 1981. He was sentenced to six months in jail and five years of probation. In 1984, Beltran was found to have violated his probation by (1) leaving Michigan without permission to care for an ill relative and (2) failing to make certain court-ordered payments. As a result, Beltran's probation was revoked and he was sentenced to a year in jail, with credit for the six months that he had previously served.

In 1992, Beltran was convicted of first-degree retail fraud, Mich. Comp. Laws Ann. § 750.356c, after attempting to steal a television and VCR from a store at which he worked. He was sentenced to three years' probation.

Finally, in 2000, Beltran pled no contest to fourth-degree criminal sexual conduct, Mich. Comp. Laws Ann. § 750.520e, a misdemeanor. The record does not disclose the nature of the underlying conduct. He was sentenced to time served as a pretrial detainee (about 120 days) and released.

As a result of his first two convictions, Beltran was served with an order to show cause in August 1994, initiating what has turned out to be a long and tortuous series of deportation proceedings. The order to show cause charged Beltran with deportability under former 8 U.S.C. § 1251(a)(2)(A)(ii) because he had been convicted of two crimes involving moral turpitude not arising out of a single scheme of criminal misconduct.

## A. Original Proceedings in Immigration Court

Beltran appeared *pro se* before an immigration judge in October 1995. He admitted the factual allegations and conceded deportability as charged. To avoid deportation, he petitioned for a waiver under former 8 U.S.C. § 1182(c),[1] which allowed an immigration judge to provide discretionary relief from deportation for legal permanent residents. Following a hearing in February 1996, the immigration judge issued a decision finding Beltran deportable under § 1251(a)(2)(A)(ii) and denying his application for a § 1182(c) waiver on the merits. The judge ordered Beltran deported to the Philippines.

---

[1] Former Section 1182(c) provided:

> Aliens lawfully admitted for permanent residen[ce] who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provisions of subsection (a) of this paragraph (other than subsection (A), (B), (C), or (E) of paragraph (3)). Nothing contained in this subsection shall limit the authority of the Attorney General to exercise the discretion vested in him under section 1181(b) of this title. The first sentence of this subsection shall not apply to an alien who has been convicted of an aggravated felony and has served a term of imprisonment of at least 5 years.

8 U.S.C. § 1182(c) (1991). The last sentence of the section, pertaining to aliens convicted of aggravated felonies who have served five years in prison, does not apply to Beltran; it applies only to aliens admitted after the date of enactment of the Immigration Act of 1990 (November 29, 1990). Pub. L. No. 101-649, § 511(b). Section 1182(c) was subsequently amended by the Anti-Terrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996), and repealed by the Illegal Immigration Reform and Immigrant Responsibility Act, Pub. L. 104-208, 110 Stat. 3009-546 (1996). As discussed below, however, these laws do not apply to the proceedings in this case, since the proceedings commenced prior to 1996.

## B. The First Appeal

Beltran appealed to the BIA, arguing that the immigration judge should have granted his application for a § 1182(c) waiver. In October 1998, the BIA vacated the deportation order, finding that the immigration judge had not adequately advised Beltran of the free legal services available to him, and remanded the case to the immigration court for further proceedings. The BIA also held that Beltran was statutorily eligible for a § 1182(c) waiver.

## C. Remanded Proceedings in Immigration Court

An immigration judge held a new hearing in January 1999. Beltran failed to appear because, as the parties agree, he was never served with the necessary papers due to a change of address. The immigration judge issued an *in absentia* order of deportation, finding that Beltran had abandoned any application for relief.

Beltran filed a motion to reopen the case and rescind the *in absentia* order of deportation in March 2001. The immigration judge denied the motion, finding that Beltran had failed to comply with the regulations concerning notification of an address change during deportation proceedings.

## D. The Second Appeal

Beltran again appealed to the BIA. The BIA dismissed the appeal in February 2002.

Beltran then petitioned for review in this Court. We reversed, holding that Beltran had complied with the statutory requirements for notification of a change of address, and remanded the case to the immigration court with instructions to grant Beltran's motion to reopen his deportation hearing. Beltran v. INS, 332 F.3d 407 (6th Cir. 2003).

## E. Second Set of Remanded Proceedings in Immigration Court

Following the remand to the immigration court, the Department of Homeland Security ("DHS") lodged an additional charge of deportability against Beltran, supported by additional factual allegations. DHS said that, because of the one-year sentence imposed after Beltran's probation violation, his larceny conviction was an "aggravated felony" as defined in 8 U.S.C. § 1101(a)(43)(G). Consequently, Beltran was subject to deportation under former 8 U.S.C. § 1251(a)(2)(A)(iii). In addition, DHS argued that, because Beltran's 2000 conviction for fourth-degree criminal sexual conduct occurred after the repeal of § 1182(c),[2] that section could not provide Beltran with relief from deportation.

In June 2004, an immigration judge sustained the additional factual allegations and the additional charge of deportability. The immigration judge found that the 1981 larceny conviction was an "aggravated felony" as defined in 8 U.S.C. § 1101(a)(43)(G). The judge also found that the aggravated felony conviction did not bar Beltran from relief under § 1182(c), since the conviction occurred prior to September 30, 1996, and thus fell within the rule articulated by the Supreme Court in INS v. St. Cyr, 533 U.S. 289 (2001).

However, the immigration judge determined that, despite Beltran's statutory eligibility for § 1182(c) relief, that provision would not provide relief from Beltran's 2000 conviction for fourth-degree criminal sexual conduct. The immigration judge held that the conviction for fourth-degree criminal sexual conduct involved "moral turpitude" and that in order to avoid deportation Beltran would require an additional waiver issued under 8 U.S.C. § 1229b(a). Finally, the immigration judge

---

[2] Section 1182(c) was repealed in 1996 by § 309(c)(1) of the Illegal Immigration Reform and Immigrant Responsibility Act, Pub. L. 104-208, 110 Stat. 3009-546.

concluded that Beltran was barred from § 1229b(a) relief because he had been convicted of an aggravated felony (the 1981 larceny conviction and subsequent probation violation) and therefore declined to consider Beltran's application for a waiver under § 1182(c), reasoning that even if the waiver were granted, Beltran would remain subject to deportation under 8 U.S.C. § 1251(a)(2)(A)(ii). The immigration judge again ordered Beltran deported to the Philippines.

### F. The Third Appeal

Beltran again appealed from the immigration judge's order of deportation. In October 2004, the BIA issued a decision affirming the immigration judge's order without a separate opinion. Beltran filed a motion for reconsideration with the BIA, which was denied. He then petitioned for review in this Court.

In March 2005, DHS moved to remand the proceedings "in view of the lengthy and complex history of this deportation matter [to] allow the [BIA] to clarify in the first instance the applicability of 8 U.S.C. § 1229b (cancellation of removal) in the case of an alien in deportation proceedings, and 8 C.F.R. §§ 1212.3(g) and 1212.3(h)(3) in the case of an alien whose proceedings commenced prior to 1996, but who suffered an additional criminal conviction after April 1, 1997." Beltran did not oppose the motion, and in June 2005 we issued an order remanding the case to the BIA.

### G. The BIA's Decision on Remand

Following the remand, the BIA issued a new decision dismissing the appeal. During the remanded proceedings, DHS reiterated its earlier argument that § 1182(c) would not provide Beltran with complete relief and that it was therefore unnecessary to consider the merits of Beltran's petition for relief under that statutory provision. DHS also argued an additional theory that it had not previously raised, specifically that under 8 C.F.R. § 1212.3(f)(5), Beltran is statutorily ineligible for

§ 1182(c) relief because one of the two claimed grounds of deportability (8 U.S.C. § 1251(a)(2)(A)(iii) (conviction of an aggravated felony)) does not have a "statutory counterpart" in former 8 U.S.C. § 1182(a).  Beltran argued that DHS should be foreclosed from raising the "statutory counterpart" argument due to collateral estoppel, law of the case, or some related doctrine.  He further argued that § 1182(c) would provide him with relief from deportation despite his conviction for fourth-degree criminal sexual conduct in 2000.

The BIA dismissed the appeal, holding first that Beltran was not eligible for cancellation of removal under 8 U.S.C. § 1229b.  The BIA noted that Beltran was subject to "deportation proceedings" that commenced prior to the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Pub. L. 104-208, 110 Stat. 3009-546 (1996).  IIRIRA replaced "deportation proceedings" with "removal proceedings" under a new set of statutory provisions and regulations.  Section 1229b, which provides for "cancellation of removal," was enacted as an amendment to IIRIRA.  As such, § 1229b is not applicable to cases, like Beltran's, proceeding under the old law of "deportation proceedings."

The BIA further held that Beltran was not eligible for § 1182(c) relief because his 1981 larceny conviction lacks a "statutory counterpart" of inadmissibility under 8 U.S.C. § 1182(a), as required by 8 C.F.R. § 1212.3(f)(5).  Rejecting Beltran's contention that collateral estoppel or law of the case should bar consideration of the statutory counterpart argument, the BIA noted that "the current issue has never before been resolved or adjudicated by any governing body that has issued a decision in this case, and is crucial in deciding whether or not the respondent is eligible for a waiver" under § 1182(c).

8

### III. Standard of Review

In immigration appeals, we ordinarily review questions of law *de novo*, but we defer to the BIA's reasonable interpretations of the immigration statutes. Singh v. Gonzalez, 451 F.3d 400, 403 (6th Cir. 2006); see also INS v. Aguirre-Aguirre, 526 U.S. 415, 424 (1999). The BIA's factual findings may be reversed only where "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

### IV. Analysis

#### A. The BIA Erred in Allowing DHS to Raise a New Argument on Remand

In June 2005, we granted DHS's unopposed motion to remand the case to the BIA "to clarify in the first instance the applicability of 8 U.S.C. § 1229b (cancellation of removal) in the case of alien in deportation proceedings, and 8 C.F.R. §§ 1212.3(g) and 1212.3(h)(3) in the case of an alien whose proceedings commenced prior to 1996, but who suffered an additional criminal conviction after April 1, 1997." After the remand, the BIA issued an opinion holding that Beltran was ineligible for relief under 8 U.S.C. § 1182(c) because there was no "statutory counterpart" to his 1981 larceny conviction under 8 U.S.C. § 1182(a), as required by 8 C.F.R. § 1212.3(f)(5). The record does not show that either Beltran, the government, or the immigration courts had previously raised the "statutory counterpart" issue even in passing.

We hold that DHS waived the "statutory counterpart" issue by failing to raise it in administrative proceedings prior to Beltran's appeal to this Court and that the BIA's consideration of the issue after the remand for clarification impermissibly exceeded the scope of the mandate. Prior to the 2005 remand, the government had consistently taken the affirmative position that Beltran was statutorily eligible for relief under § 1182(c). Counsel for DHS explicitly conceded the point

9

during the June 2004 hearing before the immigration judge. Furthermore, the immigration judge stated in her opinion that Beltran was eligible for § 1182(c) relief, and DHS successfully moved for summary affirmance of that opinion. Therefore, DHS could not have made the "statutory counterpart" argument for the first time before this Court. "It is a well-established rule that this Court will not consider claims that are presented for the first time on appeal nor arguments that are not properly raised below." Berryman v. Rieger, 150 F.3d 561, 568 (6th Cir. 1998).

The fact that the case was remanded to the BIA for clarification does not change this result. In accordance with DHS's motion, the remand was granted to allow the BIA (which had not issued a separate opinion) to clarify the application of 8 U.S.C. § 1229b and 8 C.F.R. §§ 1212.3(g) and 1212.3(h)(3), issues which were essential to the immigration court's disposition of the case. The remand was not license for the BIA to consider wholly new legal arguments that could not have been raised in this Court absent the remand. "[U]pon remand of a case for further proceedings after a decision by the appellate court, the trial court must proceed in accordance with the mandate and the law of the case as established on appeal. The trial court must implement both the letter and the spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces." Brunet v. City of Columbus, 58 F.3d 251, 254 (6th Cir. 1995) (internal quotation marks omitted). Here, the BIA exceeded the scope of the mandate in allowing DHS to raise an issue that was not discussed in the immigration court's opinion and that could not have been raised in this Court.

**B. Beltran Is Not Otherwise Foreclosed From Seeking Relief Under § 1182(c)**

Once the "statutory counterpart" bar to § 1182(c) has been lifted, Beltran is not otherwise foreclosed from seeking relief from deportation under that provision. The only suggestion to the contrary comes in the 2004 opinion of the immigration court. That opinion held that § 1182(c)

10

would not provide Beltran with relief from his 2000 conviction for fourth-degree criminal sexual conduct because the conviction occurred after § 1182(c) was repealed. In its decision after the remand, the BIA rejected the immigration court's position:

> However, just as cancellation of removal, which replaced the now repealed waiver of inadmissibility under section 212(c) of the Act, was explicitly enacted for those aliens in removal proceedings, former section 212(c) of the Act was preserved for those aliens in deportation proceedings subject to its [sic] Antiterrorism and Effective Death Penalty Act ("AEDPA"), which took effect on April 24, 1996, and IIRIRA amendments. Thus, under section 309(c) of the IIRIRA, the respondent, who is not eligible to seek cancellation of removal for his 2000 conviction because he is in deportation proceedings, is technically eligible to seek section 212(c) relief as to his post-AEDPA and IIRIRA convictions because section 309(c) of the IIRIRA specifically makes the repeal of the pre-IIRIRA deportation laws, including repeal of section 212(c) of the Act, inapplicable to those aliens in deportation proceedings.
>
> Moreover, the regulation at 8 C.F.R. § 1212.3(g), was retained at the time that the new regulations pertaining to relief under former section 212(c) of the Act were enacted in accordance with the United States Supreme Court's decision in INS v. St. Cyr, 533 U.S. 289 (2001). As a result, while the AEDPA changes to the old deportation laws should apply to bar the respondent from eligibility for a section 212(c) waiver for his 2000 conviction, the regulation at 8 C.F.R. § 1212.3(g) bars that result. Thus, the respondent's case is governed by the pre-AEDPA versions of former section 212(c) of the Act as those versions relate to his various convictions unless the regulation at 8 C.F.R. 1212.3(h)(3) bars that outcome. In this regard, we find that 8 C.F.R. § 1212.3(h)(3) should not be read to automatically bar relief under former section 212(c) of the Act for an alien who remains in old-law deportation proceedings because to do so would countermand section 309(c) of the IIRIRA which specifically preserved relief under former section 212(c) of the Act for aliens in old-law deportation proceedings such as the respondent in this case.

JA 4. The BIA's reasoning is persuasive; Beltran's deportation proceedings are governed by pre-AEDPA law, and he remains eligible for relief under § 1182(c).

In its brief, DHS adopts the BIA's position that Beltran's case is governed by pre-AEDPA law and that he remains eligible for § 1182(c) relief. Respondent's Br. at 28-32. Further, DHS agrees with Beltran that if the BIA is reversed on the "statutory counterpart" issue, the case should be remanded to the immigration court for consideration of the merits of Beltran's petition for § 1182(c) relief. Respondent's Br. at 53-54.

## V. Conclusion

For the reasons stated above, we REVERSE the decision of the BIA and REMAND the case to the immigration court with instructions to consider the merits of Beltran's petition for relief from deportation under § 1182(c).