NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0451n.06

Case No. 08-3293

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Jul 01, 2009**

LEONARD GREEN, Clerk

| | |
|---|---|
| JUAN MARTINEZ-MARROQUIN, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| | ) ON APPEAL FROM THE |
| v. | ) BOARD OF IMMIGRATION |
| | ) APPEALS |
| ERIC H. HOLDER, JR., UNITED STATES | ) |
| ATTORNEY GENERAL, | ) |
| | ) |
| Respondent. | ) |
| | ) |
| _____ | ) |

BEFORE: NORRIS, BATCHELDER, and ROGERS, Circuit Judges.

**ALICE M. BATCHELDER, Circuit Judge.** Juan Martinez-Marroquin ("Martinez") seeks review of an order of the Board of Immigration Appeals ("BIA") dismissing his appeal from an immigration judge's denial of his motion to reopen removal proceedings. Martinez argues that the BIA abused its discretion in finding that he had failed to show that he had not received notice of his removal hearing. We disagree and **DENY** the petition for review.

**I.**

Martinez, a citizen of Guatemala, illegally entered the United States in March 2005. On July 5, 2005, while Martinez was in jail in Wayne County, Michigan, the Department of Homeland Security ("DHS") personally served him with a Notice to Appear ("NTA") alleging that he was subject to removal. The NTA listed Martinez's address as 4019 Porter Street in Detroit. On July

1

15, 2005, Marilyn Reyes, Martinez's cousin, posted a $3,000 bond for the release of Martinez, Martinez's brother, and another individual. On the "Bond Information Worksheet," Reyes listed Martinez's address as 13136 Moenart in Detroit. Form I-830, "Notice to EOIR: Alien Address," also dated July 15, 2005, and signed by a DHS officer, provided: "Upon release from [DHS] custody, the respondent reported his/her address . . . will be 13136 Moenart . . . ." Form I-830 was not signed by Martinez or Reyes.

On July 18, 2005, the Immigration Court sent Martinez a Notice of Hearing informing him that his case was scheduled for a master hearing on October 21, 2005. The Notice of Hearing was sent by regular mail to 13136 Moenart. Martinez did not appear at the hearing, and the immigration judge ("IJ") entered an *in absentia* order of removal.

On January 22, 2006, border patrol agents arrested Martinez's brother in Detroit. When Martinez consulted an attorney about the reason for his brother's arrest, the attorney informed him that removal orders had been entered against him and his brother on October 21 of the previous year. On March 21, 2006, Martinez filed a motion to reopen the removal proceedings and to rescind the prior removal order. Martinez claimed that he had never received the Notice of Hearing. On April 20, 2006, the IJ denied the motion, finding it sufficient that "the written hearing notice was forwarded to the last address provided by [Martinez]," as evidenced by the bond paperwork and Form I-830.

On September 21, 2006, the BIA affirmed the IJ's decision and held that "the last address provided by [Martinez] was the Form I-830, and therefore it was proper to use that address to send notice of hearing." Martinez petitioned this court for review, and on June 7, 2007, upon the Attorney General's motion, we remanded the case to the BIA to determine "whether [Martinez] carried his

2

burden to demonstrate that the in absentia order of removal should be rescinded . . . because he did not receive notice of the removal hearing."

On remand, the BIA on March 10, 2008, again dismissed Martinez's appeal of the IJ's denial of his motion to reopen. The BIA found that the address listed on Form I-830 served as Martinez's last-provided address and that Martinez had not overcome the presumption that the use of regular mail resulted in delivery. The BIA noted that although Reyes could have explained why the Moenart address was listed on the bond worksheet and Form I-830, Martinez had not provided any statement from Reyes and had not explained his failure to do so. Martinez again petitioned this court for review.

## II.

We review for abuse of discretion the BIA's denial of a motion to reopen. *See Denko v. INS*, 351 F.3d 717, 723 (6th Cir.2003). "'In determining whether the [BIA] abused its discretion, this Court must decide whether the denial of [the] motion to reopen . . . was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group.'" *Sako v. Gonzales*, 434 F.3d 857, 863 (6th Cir.2006) (quoting *Allabani v. Gonzales*, 402 F.3d 668, 675 (6th Cir.2005)).

## III.

Under the Immigration and Nationality Act ("INA"), a NTA must specify, among other things, "the time and place at which [removal] proceedings will be held." 8 U.S.C. § 1229(a)(1)(G)(i). Written notice of a change[1] in the time or place of removal proceedings "shall be

---

[1] The NTA served upon Martinez at the Wayne County jail indicated that the date and time of his removal proceedings were "to be set." The Notice of Hearing mailed to Martinez thus did not "change" the time of his proceedings but provided the initial and sole notice of when those proceedings would occur. Although DHS appears

3

given in person to the alien (or, if personal service is not practicable, through service by mail to the alien . . . .)." 8 U.S.C. § 1229(a)(2)(A). Service by mail "shall be sufficient if there is proof of attempted delivery to the last address provided by the alien . . . ." 8 U.S.C. § 1229(c).

An alien in removal proceedings who ignores duly mailed notices faces grave consequences:

> Any alien who, after written notice required under paragraph (1) or (2) of section 1229(a) of this title has been provided to the alien or the alien's counsel of record, does not attend a proceeding under this section, shall be ordered removed in absentia if [DHS] establishes by clear, unequivocal, and convincing evidence that the written notice was so provided and that the alien is removable (as defined in subsection (e)(2) of this section). The written notice by the Attorney General shall be considered sufficient for purposes of this subparagraph if provided at the most recent address provided under section 1229(a)(1)(F) of this title.

8 U.S.C. § 1229a(b)(5)(A). Such a removal order may be rescinded "upon a motion to reopen filed at any time if the alien demonstrates that the alien did not receive notice in accordance with paragraph (1) or (2) of section 1229(a) of this title . . . ." 8 U.S.C. § 1229a(b)(5)(C)(ii). This provision places the burden on the alien to demonstrate improper notice. *See Scorteanu v. I.N.S.*, 339 F.3d 407, 411 (6th Cir. 2003).

The issue here is whether Martinez received notice in accordance with 8 U.S.C. § 1229(a)(2) when the Immigration Court sent the Notice of Hearing to the Moenart address listed on the bond worksheet and Form I-830. Martinez claims that he carried his burden of proving improper notice by showing that the Notice of Hearing was sent to the wrong address. He insists that: he had always listed Porter Street as his address; he did not provide the Moenart address to the officer who signed

_____

to equate this type of initial notice with a "notice of change" under 8 U.S.C. § 1229(a)(2)(A), such a practice is not entirely faithful to the statutory framework. Even so, our analysis here would be no different if DHS had listed a certain hearing time on the NTA and later mailed a notice of a time change. We thus focus on whether Martinez received the notice, despite the government's deviation from the statutory procedure.

4

Form I-830; and he did not receive the notice. The only evidence Martinez submitted for these claims was his own affidavit and a copy of his driver's license bearing the Porter Street address.

The BIA held that "notice of hearing mailed to the address in the Form I-830 was sufficient to constitute notice" to Martinez. Citing *Beltran v. I.N.S.*, 332 F.3d 407, 413 (6th Cir. 2003), the BIA held that "even if someone not authorized to represent the alien provided a change of address, that change of address should have been used to send notice of hearing." The BIA further found that Form I-830 bore "indicia of reliability" indicating that Martinez had provided the address listed therein. Specifically, the BIA noted that the form was dated July 15, 2005, the day Martinez was released from custody, was signed by a DHS officer, and recited that "the respondent reported his/her address" as 13136 Moenart.

Although Martinez argued that he never *received* notice of the removal hearing, it was appropriate in this case for the BIA to determine whether 13136 Moenart was Martinez's most recently provided address. True, when considering a motion to reopen under 8 U.S.C. § 1229a(b)(5)(C)(ii), we "focus[] on whether the alien actually received notice, rather than on whether [DHS] sent sufficient notice to the proper address." *Gurung v. Ashcroft*, 371 F.3d 718, 722 (10th Cir. 2004); *see also Silva-Carvalho Lopes v. Gonzales*, 468 F.3d 81, 84 (2nd Cir. 2006) ("[W]hen considering the motion to reopen, the central issue no longer is whether the notice was properly mailed . . . but rather whether the alien actually received the notice."); *Joshi v. Ashcroft*, 389 F.3d 732, 736 (7th Cir. 2004) (With motions to reopen, "the issue is not notice but receipt, because the statute allows an alien ordered removed in an absentia proceeding to reopen the proceeding . . . even if the notice that was sent . . . satisfied statutory and constitutional requirements . . . ."). Here, however, Martinez's sole argument was that he never received the notice because it was sent to the

5

wrong address — making the issue of receipt hinge on the propriety of the notice, which in turn depends on whether Martinez provided the 13136 Moenart address.

The NTA personally served on Martinez and signed by him listed his current residence as 4019 Porter Street in Detroit. The NTA indicated that the date and time of Martinez's removal hearing were to be determined. In accordance with the requirements of the INA, 8 U.S.C. § 1229(a)(1)(F), the NTA also provided, in a paragraph entitled "Failure to appear":

> You are required to provide [DHS], in writing, with your full mailing address and telephone number. You must notify the Immigration Court immediately by using Form EOIR-33 whenever you change your address or telephone number during the course of this proceeding. You will be provided with a copy of this form. Notices of hearing will be mailed to this address. If you do not submit Form EOIR-33 and do not otherwise provide an address at which you may be reached during proceedings, then the Government shall not be required to provide you with written notice of your hearing. If you fail to attend the hearing at the time and place designated on this notice, or any date and time later directed by the Immigration Court, a removal order may be made by the immigration judge in your absence, and you may be arrested and detained by [DHS].

The Certificate of Service on the NTA recited: "The alien was provided oral notice in the Spanish language of the time and place of his or her hearing and of the consequences of failure to appear as provided in section 249(b)(7) of the Act."

It is undisputed that Martinez never submitted Form EOIR-33 and that Form I-830, listing his address as 13136 Moenart, was not signed by Martinez. Under 8 U.S.C. § 1229(c), a Notice of Hearing "shall be sufficient if there is proof of attempted delivery to the last address provided by the alien in accordance with subsection (a)(1)(F) of this section." Although subsection 1229(a)(1)(F) requires the NTA to inform the alien of his duty to notify the Immigration Court in writing of any change in his address, it does not require that a written address change be signed by the alien to constitute the alien's last-provided address.

6

In fact, this was the point of our holding in *Beltran*. There, Beltran did not change his address via the official Form EOIR-33; instead, a "non-lawyer law graduate" who worked for the legal clinic representing Beltran mailed a change-of-address letter to the INS. *Beltran*, 332 F.3d at 412-13. The Immigration Court sent the Notice of Hearing to Beltran's old address; he did not show up, and the IJ entered an *in absentia* removal order against him. We held that the Notice of Hearing was insufficient because it was not sent to Beltran's last-provided address. *Id.* at 413. We found that the letter from the legal clinic bore "indicia of reliability" because it appeared on the clinic's letterhead, the INS had previously served the clinic with case documents, and Beltran's last change of address form was attached to the letter. *Id.* These facts served to put the INS on notice that, although Beltran had not signed the address change, he had authorized it. The letter thus supplied the "last address provided by" Beltran under 8 U.S.C. § 1229(a).

We disagree with the BIA that under *Beltran*, even an *unauthorized* representative may change an alien's address on his behalf. *Beltran* cannot be read so broadly: The point there was that a representative who was technically *unqualified* to represent the alien could nonetheless effectively change his address if there were "indicia of reliability" indicating the representative was authorized by the alien to do so.

We nonetheless agree with the BIA that such indicia of reliability were present in this case. Here, a DHS officer rather than Martinez's attorney or some other personal representative submitted Form I-830. But it was dated the same day Martinez was released from jail and indicated that he was the one who provided the address. Martinez has presented no corroborating evidence for his claim that he never provided this address to the DHS officer. *See generally Joshi*, 389 F.3d at 735 ("[A] bare, uncorroborated, self-serving denial of receipt, even if sworn, is weak evidence."). Although

7

the NTA listed Martinez's residence as 4019 Porter Street and Martinez signed the Certificate of Service affixed to the NTA, that Certificate verified only that he had received the NTA — not that he had provided or otherwise confirmed the information in the NTA. The BIA observed that Reyes, Martinez's cousin and bond obligor, would have been able to "shed some light on who provided the address, whether [Martinez] was aware of the address inserted in the Form I-830, and to whom the address belonged." Martinez, however, did not proffer a statement from Reyes or attempt to explain why he was unable to do so. It was Martinez's burden to show that he had not reported the Moenart address to DHS, and the BIA did not abuse its discretion in holding that he had failed to shoulder that burden.

Although in *Beltran* we vacated the *in absentia* removal order because the hearing notice was not sent to the address provided on Beltran's behalf, applying the same reasoning leads us to affirm Martinez's *in absentia* removal order. Just as the Immigration Court cannot ignore an alien's notice of address change, an alien cannot ignore hearing notices sent to the address he has provided.

Moreover, Martinez never asserted or offered any evidence that the Moenart address was not one where he could receive mail. Despite having opportunity to do so, Martinez never explained why Reyes provided that address. He did not disavow a connection to that address. He asserted only that he did not live there, a fact that is not inconsistent with his ability to receive mail there. Because the BIA relied in part on Martinez's failure to provide readily available explanatory evidence, the BIA's decision has a rational explanation and is entitled to deference.

Finally, the BIA did not abuse its discretion in holding that Martinez had provided no evidence to rebut the presumption that the Immigration Court's use of regular mail to send the Notice of Hearing to the address on Form I-830 resulted in delivery. *See Silva-Carvalho Lopes*, 468 F.3d

at 84-86.  As the BIA noted:  Martinez did not initiate the removal proceedings; he did not show that he had appeared at prior hearings or that he had a lack of motive to avoid attending the hearing; and the Notice of Hearing was not returned as undeliverable by the postal service.  *See id.*

## IV.

The BIA's decision not to reopen Martinez's removal proceedings had a rational explanation and was not an abuse of discretion.  Accordingly, we **DENY** his petition for review.