NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
 File Name: 19a0162n.06

 Case No. 18-3618

 UNITED STATES COURT OF APPEALS
 FOR THE SIXTH CIRCUIT
 FILED
 Apr 01, 2019
RICHARD KOYO, ) DEBORAH S. HUNT, Clerk
 )
 Petitioner, )
 ) ON PETITION FOR REVIEW
v. ) FROM THE UNITED STATES
 ) BOARD OF IMMIGRATION
WILLIAM P. BARR, Attorney General, ) APPEALS
 )
 Respondent. )

 BEFORE: CLAY, McKEAGUE, and WHITE, Circuit Judges.

 CLAY, Circuit Judge. Petitioner Richard Philemon Koyo seeks review of a final order of

removal issued by the Board of Immigration Appeals (“BIA”) on June 4, 2018, affirming the

Immigration Judge’s (“IJ”) denial of Koyo’s application for asylum, under the Immigration and

Nationality Act (“INA”), 8 U.S.C. § 1158(b); withholding of removal, under 8 U.S.C.

§ 1231(b)(3)(A); and Convention Against Torture (“CAT”) protection, under 8 C.F.R. § 1208.16.

For the reasons set forth below, we DENY Koyo’s petition for review.

 BACKGROUND

 Factual and Procedural History

 Richard Koyo is a citizen of the Democratic Republic of the Congo (“DRC”). He entered

the United States through Ohio on June 7, 2006. On November 30, 2006, Koyo submitted an

application for asylum, withholding of removal, and protection under the Convention Against
Case No. 18-3618, Koyo v. Barr

Torture. Koyo appeared before an asylum officer on January 24, 2007; the asylum officer found

Koyo’s testimony not credible and referred the case to an immigration judge. The Department of

Homeland Security (“DHS”) served Koyo with a notice to appear on January 26, 2007. Koyo

admitted the factual allegations in the notice to appear, with the correction that he is a citizen of

the DRC, and conceded removability.

 Koyo’s individual hearings began on January 20, 2011, and they continued through

November 18, 2015. In addition to Koyo himself, three witnesses testified on Koyo’s behalf:

Fulgence Mundende Kage, Emile Kimbagni, and Kitele Ntontolo.

 A. Testimony Presented at Koyo’s Hearings

 Koyo was born in the DRC in March of 1959. He worked as a pastor in the Mission Church.

In 1997, Laurent-Désiré Kabila launched a violent overthrow of the long-reigning dictator of the

DRC, Mobutu Sese Seko. Koyo initially supported Kabila as an alternative to the dictatorship and

human rights violations of Mobutu. One night in 1997, Mobutu soldiers broke into Koyo’s house,

beat him, beat and raped his pregnant wife, and stabbed him in the stomach.

 Kabila began persecuting people from Rwanda, so Koyo hid and sheltered Rwandans in

his church’s basement in January 2000. Kabila soldiers came to his church, asked whether he was

hiding Rwandans, ransacked his church, and severely beat him and left him in the woods. A

passerby found Koyo and drove him home, but Koyo did not go to the hospital because it was not

safe.

 In May 2002, Koyo was again targeted by Kabila’s soldiers. 1 Soldiers came to Koyo’s

house looking for him, and when they could not find him they beat his wife and broke everything

in his house. The soldiers threatened to return, so Koyo and his family fled and hid at a friend’s

1
 By this time, Laurent Kabila had been assassinated and his son, Joseph Kabila, had taken over.

 -2-
Case No. 18-3618, Koyo v. Barr

house. Koyo believed the soldiers came because Koyo preached against Kabila’s corruption and

human rights abuses.

 The next incident occurred in February 2006. Koyo was at work when four armed men

approached the door. They asked if he was Pastor Richard, then attacked him, choking and beating

him. The soldiers destroyed Koyo’s office and warned him that he would be killed unless he

stopped preaching against Kabila.

 In April 2006, Koyo was again attacked while at a meeting of a group he founded to discuss

human rights violations and prepare for upcoming DRC elections. Koyo awoke in the hospital

after losing consciousness, where Koyo’s friend Roberto Cobi told him that soldiers had attacked

and beaten the congregation. Koyo had cuts and injuries on his face and arms, and his right eye

was swollen. Koyo was later diagnosed with an eye injury by a doctor in the United States. Koyo

stated that the soldiers attacked him because of Koyo’s preaching against the human rights abuses

and corruption of the Kabila government.

 After the April 2006 attack, Koyo believed that Kabila’s soldiers would kill him if he stayed

in the DRC. Cobi agreed to help him leave the DRC. Cobi brought Koyo to Cobi’s home in Luanda,

Angola, where Koyo stayed for six weeks while Cobi arranged the passport and forms for Koyo

to obtain a U.S. visa. Cobi brought Koyo to the U.S. Embassy in Luanda to get the visa and told

Koyo to proceed under the name Ricardo. Koyo’s visa was approved by the embassy, and he

traveled to the United States. Koyo’s wife and children fled to Brazzaville, Congo around the same

time.

 Koyo entered the United States through Cincinnati, Ohio on June 7, 2006. The immigration

forms Koyo filled out on the airplane list his name as Ricardo Coio and his country of nationality

as Angola. Upon arriving, Koyo returned the passport to Cobi. At one point, Koyo stated that the

 -3-
Case No. 18-3618, Koyo v. Barr

passport and visa photographs were not of him, but he later stated that his photograph was in the

passport and visa.

 Koyo initially claimed that he had only travelled outside of the DRC once before April of

2006, on a 1998 trip to Brazzaville. However, Department of State records indicated that Koyo

was fingerprinted under the name Ricardo Coio on September 12, 2005, in Luanda, Angola.

Koyo’s counsel instructed Koyo to invoke his Fifth Amendment right to not answer questions

regarding whether Koyo had been to the U.S. Embassy in Angola more than once or whether he

had traveled to other countries prior to 2006 other than his trip to Brazzaville. However, Koyo’s

wife wrote a letter in which she stated that Koyo fled to Angola in July 2005, returning to the DRC

to resume preaching several months later. Koyo later admitted that he had briefly escaped to

Angola in 2005. Koyo stated that he had previously denied going to Angola before 2006 because

he had forgotten about the prior trip.

 Two individuals, Emile Kimbangi and Pastor Ntontolo, testified regarding two letters

written to help Koyo obtain a visa to visit the Grace Community Church in Raleigh, North

Carolina. The first is a letter dated July 22, 2005 and addressed to the U.S. Embassy in Luanda,

explaining that the Grace Community Church had invited Rev. Ricardo Coio to visit the church

for three weeks in September 2005. The letter is written on Grace Community Church letterhead

and is signed by Murry Haber, the pastor of Grace Community Church at the time.

 The second letter is dated April 6, 2006, and includes a statement purportedly from Haber

inviting Rev. Ricardo Coio to visit the Grace Community Church from May 7 to May 29, 2006.

This letter is only addressed “to who [sic] it may concern.” (Exhibit A, A.R. 568.) It is not signed,

and it is not on church letterhead. The 2006 letter was apparently faxed to U.S. Immigration and

Customs Enforcement in 2011 by the Grace Community Church document custodian, with the

 -4-
Case No. 18-3618, Koyo v. Barr

note “[h]ope this helps.” (Id. at 569.) The document custodian stated in a 2012 affidavit that she

did not remember sending the fax and that she had no knowledge of the circumstances surrounding

the 2006 draft letter, but that the letter is “a true and accurate copy of a draft letter that is in the

computer files of Grace Community Church.” (Exhibit B, A.R. 571.) Koyo’s counsel objected to

the introduction of the 2006 letter on the basis that it was not authenticated and its origins were

unclear. The IJ admitted the 2006 letter, stating that the objection would “go to weight.” (Hearing

Transcripts, A.R. 513.)

 Kimbangi and Ntontolo, who both knew Koyo through his ministry in the DRC, are

married and have lived in the United States since 2000 and 1994, respectively. Each testified that

they worked to help Koyo come to the United States. Kimbangi testified that she received

telephone calls from acquaintances in April 2006 informing her that Koyo had been severely

beaten and injured. She and Ntontolo asked Haber to invite Koyo to visit Grace Community

Church in order to get Koyo out of the DRC. Ntontolo testified that beginning in 2004 or 2005, he

received calls from an acquaintance in the DRC, Pastor Makila, telling Ntontolo that Koyo was in

danger as a result of speaking out against the Kabila regime. Ntontolo stated that in 2005, Makila

asked Ntontolo to help Koyo leave the DRC. Ntontolo drafted a letter on Haber’s behalf inviting

Koyo to visit Grace Community Church. Haber signed the letter, and Ntontolo mailed it. Ntontolo

stated that after he sent the letter, he lost contact with Makila until late in 2006. At that time, Makila

called Ntontolo to let him know that Koyo was on the way to the United States and to ask Ntontolo

to help pick up Koyo at the airport. Ntontolo stated that he only drafted one letter for Haber’s

signature, and that Haber had never drafted or signed another letter on Koyo’s behalf. Ntontolo

identified the 2005 letter as the letter he had drafted and sent on behalf of Haber.

 -5-
Case No. 18-3618, Koyo v. Barr

 Haber also submitted an affidavit stating that the 2005 letter was the letter he sent at the

request of Ntontolo. Haber stated that he had no recollection of the 2006 draft and that he did not

know anything about the 2006 letter being faxed to ICE.

 B. Proceedings Below

 In a written decision on June 6, 2017, the IJ found Koyo not credible “due to internal

inconsistencies and inconsistencies between his testimony and other evidence in the record.” (IJ

Decision, A.R. 111.) The IJ based this determination on several factors. First, the IJ found that

Koyo had not satisfactorily explained inconsistencies in his testimony regarding his 2005 trip to

Angola or regarding whether the photographs in his passport and visa were pictures of him.

Second, the IJ was concerned with Koyo’s inability “to explain whether he visited Angola in 2005,

how and why his fingerprints are the same as an individual’s by the name of Ricardo Coio, and

how his fingerprints were obtained in Angola in 2005, if he never left the DRC before 2006.” (Id.)

Third, the IJ found Koyo’s testimony that he had not applied for a visa before 2006 inconsistent

with the evidence suggesting that Haber and Ntontolo sent the letter inviting Koyo to the United

States in 2005. The IJ found Koyo’s witnesses credible but gave their testimony diminished weight

due to inconsistencies between them. The IJ noted that Koyo “presented strong evidence that

corroborates his account,” but nevertheless found that Koyo had not met his burden of proving

eligibility for relief. (Id. at 113.) The IJ found that the evidence provided “strong reason to believe”

that Koyo is a citizen of Angola in addition to the DRC. (Id. at 114.) Based on these findings, the

IJ denied Koyo’s application for asylum. The IJ also denied withholding of removal under 8 U.S.C.

§ 1231(b)(3)(A) and the Convention Against Torture.

 Koyo appealed the IJ’s decision to the BIA, which dismissed Koyo’s appeal on June 4,

2018. The BIA found that there was no clear error in the IJ’s adverse credibility determination and

 -6-
Case No. 18-3618, Koyo v. Barr

that Koyo’s arguments were not persuasive. The BIA also found that because Koyo could not meet

his burden of proof for asylum, he could not meet his burden of proof for withholding of removal.

Finally, the BIA declined to overturn the IJ’s denial of Koyo’s request for protection under the

Convention Against Torture.

 DISCUSSION

 Standard of Review

 When this Court reviews a removal order denying asylum, withholding of removal, or CAT

protection, the factual findings of the IJ and the BIA—including adverse credibility

determinations—are reviewed for “substantial evidence.” Marouf v. Lynch, 811 F.3d 174, 180 (6th

Cir. 2016) (citation omitted). This is a “deferential standard: [a] reviewing court should not reverse

simply because it is convinced that it would have decided the case differently.” Marikasi v. Lynch,

840 F.3d 281, 287 (6th Cir. 2016) (citation omitted). Rather, findings of fact, including adverse

credibility determinations, must be upheld “unless any reasonable adjudicator would be compelled

to conclude to the contrary.” 8 U.S.C. § 1252(b)(4)(B); Liti v. Gonzales, 411 F.3d 631, 636 (6th

Cir. 2005).

 “Where the BIA reviews the immigration judge’s decision and issues a separate opinion,

rather than summarily affirming the immigration judge’s decision, [the Court reviews] the BIA’s

decision as the final agency determination.” Khalili v. Holder, 557 F.3d 429, 435 (6th Cir. 2009)

(citing Morgan v. Keisler, 507 F.3d 1053, 1057 (6th Cir. 2007)). “To the extent the BIA adopted

the immigration judge’s reasoning, however, this Court also reviews the immigration judge’s

decision.” Id. (citing Patel v. Gonzales, 470 F.3d 216, 218 (6th Cir. 2006)). This Court reviews

 -7-
Case No. 18-3618, Koyo v. Barr

questions of law de novo. Ramaj v. Gonzales, 466 F.3d 520, 527 (6th Cir. 2006) (citing Ali v.

Ashcroft, 366 F.3d 407, 409 (6th Cir. 2004)).

 Analysis

I. Evidentiary Burdens and Standards of Proof

 Koyo applied for asylum, withholding of removal, and CAT protection. The Attorney

General has discretion to grant asylum to applicants who meet the definition of a “refugee.” 8

U.S.C. § 1158(b)(1)(A). A “refugee” is a person “who is unable or unwilling to return to her home

country because of past persecution or a ‘well-founded fear’ of future persecution ‘on account of

race, religion, nationality, membership in a particular social group, or political opinion.’” Umana-

Ramos v. Holder, 724 F.3d 667, 670 (6th Cir. 2013) (quoting 8 U.S.C. § 1101(a)(42)). To prevail

on a petition for withholding of removal under the INA, 8 U.S.C. § 1231(b)(3), an applicant must

demonstrate “that there is a clear probability that he will be subject to persecution” because of

“race, religion, nationality, membership in a particular social group, or political opinion.” Khalili,

557 F.3d at 435–36 (quotation marks and citations omitted). “An applicant seeking withholding of

removal faces a more stringent burden than what is required on a claim for asylum.” Liti, 411 F.3d

at 640 (citation omitted). Finally, an applicant seeking CAT protection must show that “it is more

likely than not that he or she would be tortured if removed[.]” Shkulaku-Purballori v. Mukasey,

514 F.3d 499, 503 (6th Cir. 2007) (quotation marks and citations omitted).

 Applicants bear the burden of establishing eligibility for protection under the INA and the

CAT. See Marouf, 811 F.3d at 188. Before determining whether an applicant meets the statutory

criteria under the INA or the CAT, an immigration judge “make[s] a threshold determination of

the alien’s credibility.” Zhao v. Holder, 569 F.3d 238, 243 (6th Cir. 2009) (citing In re O-D-, 21 I.

& N. Dec. 1079 (BIA 1998)). An adverse credibility finding “precludes an applicant from

 -8-
Case No. 18-3618, Koyo v. Barr

demonstrating either the well-founded fear of future persecution necessary to establish eligibility

for asylum, or the ‘clear probability’ of future persecution necessary for withholding of removal.”

Seo v. Holder, 533 F. App'x 605, 615 (6th Cir. 2013) (citing El-Moussa v. Holder, 569 F.3d 250,

257 (6th Cir. 2009)); see also Zhao, 569 F.3d at 249 (finding that an adverse credibility finding

also precludes relief under CAT). Although the law gives broad discretion to IJs in making

credibility determinations, that discretion is not unlimited. “It does not permit a judge to ‘cherry

pick’ facts or inconsistencies to support an adverse credibility finding that is unsupported by the

record as a whole.” Marouf, 811 F.3d at 182 (citation and alteration omitted).

 Koyo does not contest the IJ’s determination that his testimony was not credible. Instead,

Koyo argues that the BIA erred by failing to adequately consider his independent corroborating

evidence. According to Koyo, the independent evidence that he submitted corroborating his claims

was sufficient to overcome the adverse credibility finding.

 The BIA and the IJ adequately considered Koyo’s corroborating evidence. The IJ explained

that it found the testimony of Koyo’s supporting witnesses, Kage, Kimbangi, and Ntontolo,

credible, but that it gave their testimony diminished weight due to lack of first-hand knowledge

and inconsistencies among their narratives. The IJ discussed other evidence that Koyo submitted,

including letters of support corroborating Koyo’s account of the 2006 attack, Koyo’s DRC birth

certificate, a letter from a doctor describing Koyo’s eye injuries, and medical reports from the DRC

describing Koyo’s condition after the 1997 and 2006 attacks. The IJ explained:

 While [Koyo] presented strong evidence that corroborates his account, the Court
 notes that he bears the burden to prove his eligibility for relief under the Act. Given
 the plethora of evidence that both supports and undermines his account, as well as
 the strongly adverse credibility determination, the Court finds that [Koyo] has not
 met his burden and has not proven his eligibility for relief.

 -9-
Case No. 18-3618, Koyo v. Barr

(IJ Decision, A.R. 113.) The record demonstrates that the IJ considered all the evidence before it

when denying Koyo’s application, not solely the adverse credibility determination.

 The BIA recognized the IJ’s determination that Koyo’s corroborating evidence was

insufficient to overcome the adverse credibility determination. The BIA stated: “contrary to the

respondent’s assertion, the Immigration Judge did consider the respondent’s documentary

submissions and witness testimony. . . . Based on this conflicting documentary evidence, the

Immigration Judge made the reasonable inference that portions of the respondent’s claim of

persecution are untrue.” (BIA Decision, A.R. 5.) Similarly, the BIA explained:

 [T]he Immigration Judge denied [Koyo’s] asylum application for several reasons.
 Specifically, the Immigration Judge denied [Koyo’s] asylum claim based on
 [Koyo’s] internally inconsistent testimony and conflicts among and within the
 respondent’s testimony, the testimony of his witnesses, and the respondent’s
 documentary submissions. In addition, the Immigration Judge concluded that while
 some of [Koyo’s] evidence supported his claim, some served to undermine it.

(Id. at 4.) The BIA was not required to specifically discuss each piece of evidence Koyo presented

in support of his case. Scorteanu v. INS, 339 F.3d 407, 412 (6th Cir. 2003) (stating that the BIA

“need not list every possible positive and negative factor in its decision”) (internal quotation marks

and citation omitted). Instead, “[w]hat is required is merely that it consider the issues raised, and

announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard

and thought and not merely reacted.” Id. (quotations and citation omitted). The BIA considered

Koyo’s argument that the IJ had insufficiently addressed Koyo’s corroborating evidence and

determined that the IJ “made the reasonable inference that portions of [Koyo’s] claim of

persecution are untrue.” (BIA Decision, A.R. 5.) The BIA specifically noted that Koyo failed to

adequately answer questions about his possible Angolan citizenship: he could not explain the letter

from his wife stating that they lived in Angola in 2005; he traveled on an Angolan passport; and

 - 10 -
Case No. 18-3618, Koyo v. Barr

he had “twice indicated at the United States embassy in Angola that he was an Angolan citizen.”

(Id.) The BIA satisfied its obligation to consider Koyo’s evidence.

 Koyo additionally argues that the IJ and BIA erred in their analyses of Koyo’s withholding

of removal and CAT protection claims. An applicant seeking withholding of removal must

demonstrate “that there is a clear probability that he will be subject to persecution” because of

“race, religion, nationality, membership in a particular social group, or political opinion.” Khalili,

557 F.3d at 435–36 (quotation marks and citations omitted). An applicant seeking CAT protection

must show that “it is more likely than not that he or she would be tortured if removed[.]” Shkulaku-

Purballori, 514 F.3d at 503 (quotation marks and citations omitted). Koyo argues that he can

prevail on these claims despite his inability to sustain his burden of proof on his asylum claim due

to the adverse credibility finding.

 As explained above, Circuit precedent indicates that because Koyo’s asylum claim fails

due to the adverse credibility determination, Koyo cannot sustain his burden under the withholding

of removal and CAT protection standards. See, e.g., Slyusar v. Holder, 740 F.3d 1068, 1072 (6th

Cr. 2014) (“An adverse credibility determination is fatal to claims for asylum and relief from

removal, preventing such claims from being considered on their merits.”); El-Moussa, 569 F.3d at

257. To support his argument that he may qualify for withholding of removal despite not qualifying

for asylum, Koyo cites the Sixth Circuit case Vakeesan v. Holder, 343 F. App’x 117 (6th Cir.

2009). In that case, the Court stated that “an alien may prevail on a theory of future persecution

despite an IJ’s adverse credibility ruling as to past persecution, so long as the factual predicate of

her claim of future persecution is independent of the testimony that the IJ found not to be credible.”

Id. at 125 (internal quotation marks and citation omitted). However, the Court in Vakeesan

recognized that “[a]n alien who fails to establish that she is a refugee eligible for asylum under

 - 11 -
Case No. 18-3618, Koyo v. Barr

8 U.S.C. § 1158 will necessarily fail to satisfy the ‘clear probability’ requirement for a withholding

of deportation claim.” Id. at 120 n.5 (citing Abay v. Ashcroft, 368 F.3d 634, 637 (6th Cir. 2004)).

The IJ and BIA did not err in denying Koyo’s claim for withholding of removal based on the fact

that Koyo failed to meet his burden for asylum.

 The BIA and IJ also did not err in their consideration of Koyo’s CAT protection claim.

When an applicant “has failed to satisfy the threshold showing of credibility to warrant

withholding of removal under the [INA], it logically follows that he cannot demonstrate that he is

entitled to relief under the CAT.” Zhao, 569 F.3d at 249; see also El-Moussa, 569 F.3d at 257;

Hassan v. Gonzales, 403 F.3d 429, 435 (6th Cir. 2005). “As a general rule courts and agencies are

not required to make findings on issues the decision of which is unnecessary to the results they

reach.” INS v. Bagamasbad, 429 U.S. 24, 25 (1976) (citations omitted). The BIA and IJ did not err

in rejecting Koyo’s CAT protection claim.

II. The 2006 Letter

 At Koyo’s immigration hearings, the government submitted the 2005 and 2006 letters as

evidence. Koyo’s counsel objected to the submission of the 2006 letter. Koyo’s counsel argued

that the letter should not have been admitted because it was “not properly authenticated in any

way.” (Hearing Transcript, A.R. 511.) The IJ admitted the 2006 letter over Koyo’s counsel’s

objection. Koyo argues before this Court that admission of the 2006 letter violated his due process

rights.

 An individual asserting due process violations in a removal hearing must demonstrate both

that there was a defect in the removal proceeding and that the individual was prejudiced by that

defect. See Bi Qing Zheng v. Lynch, 819 F.3d 287, 296 (6th Cir. 2016) (citing Vasha v. Gonzales,

410 F.3d 863, 872 (6th Cir. 2005). This Court “need not address the merits of a claim if there is

 - 12 -
Case No. 18-3618, Koyo v. Barr

no demonstration of prejudice. Moreover, to establish the requisite prejudice, [an individual] must

show that the due process violations led to a substantially different outcome from that which would

have occurred in the absence of those violations.” Graham v. Mukasey, 519 F.3d 546, 549–50 (6th

Cir. 2008) (internal citation omitted) (citing Garza-Moreno v. Gonzales, 489 F.3d 239, 241–42

(6th Cir. 2007)).

 Koyo’s due process claim fails because he cannot show prejudice. There is no indication

that the outcome of the case would have been different if the IJ had not admitted the 2006 letter

into evidence. The only comment the IJ made in its decision regarding the 2006 letter was to note

that “[t]hroughout the final hearings in this case, the Court was puzzled by [Koyo’s] and Mr.

Ntontolo’s assertions that the letter dated in 2006 from Pastor Haber was somehow not genuine,

and their accusations against the DHS counsel.” (IJ Decision, A.R. 112.) The IJ instead focused

its discussion on the 2005 letter, and it based its decision on “inconsistencies between [Koyo’s]

testimony, the testimony of Mr. Ntontolo, and the documentary record.” (Id.)

 The 2006 letter also did not play any role in the BIA decision. The BIA’s only mention of

the 2006 letter was in a single footnote, stating that the BIA was not considering the 2006 letter in

its analysis. The BIA instead discussed the IJ’s decision finding it implausible that the 2005 letter,

which invited Koyo to visit Grace Community Church in September 2005, could be used as a basis

for Koyo’s 2006 visa request. Koyo is unable to demonstrate that he was prejudiced by the

introduction of the 2006 letter, as neither the IJ nor the BIA relied on the 2006 letter in denying

Koyo’s application. Because Koyo cannot demonstrate prejudice, his due process claim fails.

III. Citizenship

 Based on Koyo’s testimony and the evidence presented, the IJ found that “there is strong

reason to believe [Koyo] is, at a minimum, also a citizen of Angola.” (IJ Decision, A.R. 114.) An

 - 13 -
Case No. 18-3618, Koyo v. Barr

individual with dual nationality does not qualify for asylum unless that individual is able to

demonstrate a fear of persecution in both countries. Matter of B-R-, 26 I. & N. Dec. 119, 122 (BIA

2013). The IJ found that Koyo’s inability to establish his citizenship, in addition to the adverse

credibility finding, prevented Koyo’s asylum application from succeeding.

 Koyo argues that the BIA did not adequately respond to his argument that he had

established that he was a citizen of the DRC. Koyo also asserts that the government has not

established that he is a citizen of Angola. Koyo’s arguments are unavailing. The BIA adequately

addressed the evidence relating to Koyo’s citizenship; it was not required to “list every possible

positive and negative factor in its decision.” Scorteanu, 339 F.3d at 412 (citation omitted). The

BIA recognized that Koyo submitted a birth certificate from the DRC and a letter from his mother

stating that he was a citizen of the DRC. The BIA also discussed Koyo’s visa applications

indicating that he was an Angolan citizen, Koyo’s statements to embassy personnel in Luanda that

he was an Angolan citizen, and the fact that Koyo did not answer questions that would have helped

address his possible Angolan citizenship. The BIA’s decision shows that “it consider[ed] the issues

raised, and [it] announce[d] its decision in terms sufficient to enable [this Court] to perceive that

it has heard and thought and not merely reacted.” Id. (quotations and citations omitted).

 CONCLUSION

 Because the BIA and IJ adequately considered the evidence before them in denying Koyo’s

application for asylum, withholding of removal, and CAT protection, we DENY Koyo’s petition

for review.

 - 14 -